PROVISIONAL MUNICIPALITY OF PENSACOLA v. LEHMAN et al.

(Circuit Court of Appeals, Fifth Circuit. June 13, 1893.)

No. 112.

1. EQUITY—PLEADING—DEFECTIVE DESCRIPTION IN BILL—CURED BY ANSWER.
A bill in equity to enforce the conveyance of realty, and resting upon a law (Act Fla. June 2, 1887; St. c. 3774) empowering a city to convey public property, although demurrable because it fails to clearly state whether the property in dispute was proprietary, or held in trust for public use, is cured of its defect by respondent's answering over, instead of standing by his demurrer.

2. SAME—SPECIFIC PERFORMANCE—CONTRACT TO CONVEY PUBLIC PROPERTY.
The city of Pensacola, becoming insolvent, sold and attempted to convey its public parks to private persons, having no legal authority to do so. It received the purchase price, and recognized the ownership and possession of certain purchasers, but subsequently resumed possession of the property. Thereafter, the legislature passed an act authorizing the city to convey to the holders the public property theretofore sold for valuable consideration, "whenever it shall be shown to the satisfaction of the * * * commissioners that the city sold * * * and received value therefor * * * and it shall appear equitable" to them to make such conveyance. Act June 2, 1887; St. c. 3774. Held, that purchasers to whom the board refused to make conveyances were entitled to equitable relief.

3. MANDAMUS TO COMPEL CONVEYANCE — PUBLIC PROPERTY — CLEAR LEGAL RIGHT.
Under the act the purchaser could not assert a clear legal right to have the disputed property conveyed, and could not, therefore, have relief in the Florida courts by mandamus.

4. FEDERAL COURTS—JURISDICTION—MANDAMUS TO COMPEL CONVEYANCE.
Mandamus cannot be invoked as an original proceeding in a federal court; and the conveyance of real property to parties asserting a clear legal right cannot, in a United States court, be enforced thereby.

5. SAME—MANDAMUS IN STATE COURT—ADEQUATE REMEDY AT LAW.
Mandamus in a state court to enforce the conveyance of real property, as to which a clear legal right is asserted, is not such an adequate remedy at law as to bar the equitable jurisdiction of a federal court. Smith v. Bourbon Co., 8 Sup. Ct. Rep. 1043, 127 U. S. 105, distinguished.

**6.** SPECIFIC PERFORMANCE—BILL TO ENFORCE CONVEYANCE—PUBLIC PROPERTY.

Act Fla. June 2, 1887, (St. c. 3774,) empowered the city of Pensacola, to convey certain public property theretofore sold, and attempted to be conveyed, "whenever it shall be shown to the satisfaction of the * * * commissioners that the city sold * * * and received value therefor * * * and it shall appear equitable" to the commissioners to make such conveyance. *Held* that, even if the act were only permissive, equity would require the city to return the purchase money, or convey the premises, to purchasers for a valuable consideration.

**7.** SAME—CONSTRUCTION OF STATUTES—EQUITY.

The words, "and it shall appear equitable to said board," refer only to existing, well-defined equities, and do not vest an arbitrary discretion in the municipality. Unless there should, in fact, be equitable reasons against making such conveyance, the statute is mandatory. Supervisors *v.* U. S., 4 Wall. 435, followed.

**8.** SAME—CONTRACT TO CONVEY—FAILURE TO IMPROVE PROPERTY.

The failure of the purchasers to build upon and improve the lots in question raises no equity in favor of the municipality.

Appeal from the Circuit Court of the United States for the Northern District of Florida.

In Equity. Bill by Emanuel Lehman and Meyer Lehman against the Provisional Municipality of Pensacola to enforce the conveyance of certain real property to complainants. Decree for complainants. Respondent appeals. Affirmed.

W. A. Blount, for appellant.

R. C. Brickell, H. C. Semple, W. A. Gunter, and Richard L. Campbell, for appellees.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

PARDEE, Circuit Judge. Emanuel Lehman and Meyer Lehman, who were citizens of the state of New York, brought their bill in the circuit court against the Provisional Municipality of Pensacola, in the state of Florida, and therein, among other things, alleged:

"That the city of Pensacola, a corporation formerly existing under the laws of the state of Florida, (of which the respondent is the legal successor, being invested by said laws with all the rights, and subject to all the liabilities, of said city of Pensacola,) claiming to be the absolute owner of all the lots in blocks O and P, (according to 'the plan drawn by Theodore Moreno, and adopted by the city of Pensacola on 24th of July A. D. 1866,') situated within the limits of said city of Pensacola and said provisional municipality, did on the 8th of January, A. D. 1868, bargain, sell, and convey, by deed with warranty of title, to your orators and Benjamin Newgass, lot six, (6,) in said block O, for the consideration of twelve hundred dollars; lot number one, in block P, for the sum of twelve hundred and fifty dollars; and two, (2,) in said last-mentioned block, for the sum of nine hundred and fifty dollars; said deed of conveyance being executed to effectuate a sale of said lots made to your orators and said Newgass on the 1st of January, A. D. 1867, at public outcry in the city of Pensacola. under the authority of a resolution of the board of aldermen of said city of Pensacola, adopted 24th July and November, 1866, at which sale your orators and said Newgass were the highest and best bidders for said lots at the sums above mentioned, payable half in cash, and the other half in one year, with interest, which payments were fully made, and said deed of conveyance duly recorded in the record of deeds of Escambia county, state of Florida, on the 17th January,"

1868. And orators further allege that on the 9th July, 1872, the said Benjamin Newgass conveyed all his right and interest in said lots to your orators, who have ever since been the sole owners thereof. And orators further show that said block O was divided by said survey of Theodore Moreno into six lots, numbered from 1 to 6 inclusive, and said block P was by the same survey divided into two lots, 1 and 2, and that the area out of which said blocks were formed was claimed by the city of Pensacola under one right and title. And orators further show that in December, A. D. 1866, said city of Pensacola sold and conveyed to Henry Pfeiffer lot one, (1,) in block O, for the sum of two thousand and sixty dollars, being the most valuable of all the lots in the block, because fronting on Palafox street, which is the main business street of the city of Pensacola. On 27th December, A. D. 1866, the said city of Pensacola sold and conveyed to Patrick Maloney lot two, (2,) in block O, fronting on Palafox street, for the consideration of two thousand and five dollars; said sale having taken place under authority of the resolution of the board of aldermen of the city of Pensacola, of 24th July, A. D. 1866. On 1st of January, A. D. 1867, the said city of Pensacola conveyed to George Pfeiffer lot five, (5,) in block O, for the sum of twelve hundred and fifty dollars, half cash and half on credit of twelve months, with interest, said conveyance having been made to effectuate a sale under the aforementioned resolution of the board of aldermen of the city of Pensacola, of November, A. D. 1866. On 16th March, A. D. 1867, the said city of Pensacola conveyed to Mary Petersen lot three, (3,) in block O, for the consideration of one thousand and ten dollars; said conveyance having been made to effectuate a sale authorized by the said resolution of said board of aldermen of 24th July, A. D. 1866. And orators further show that, doubts (as they are informed, but of which they had no knowledge until within a year before the filing of this bill) having arisen as to the right of the said city of Pensacola to make the sales and conveyances as aforesaid, as well as to the validity of sales and conveyances of other property made under its authority, the legislature of the state of Florida, by an act approved 2d of June, 1887, which is chapter 3774 of the Statutes of said state, empowered the said Provisional Municipality of Pensacola to make deeds to the grantees of such property, which should vest the title in such grantees, their heirs and assigns, forever, 'wherever it shall be shown to the board of commissioners [of such municipality] that the city of Pensacola sold said property and received value therefor from some holder or his grantee, and it should appear equitable to said board that such conveyance should be made.'

"And your orators further allege that, in execution of the trust imposed upon respondent by said act of the legislature, respondent did, on the 29th of February, A. D. 1888, convey to the heirs of said Henry Pfeiffer, then deceased, said lots one (1) and five, (5,) in block O; said Henry Pfeiffer, in his lifetime, having acquired title to said lot five (5) from said George Pfeiffer. On the 13th of April, 1888, a like deed was executed to the said Patrick Maloney by respondent for said lot two, (2,) in block O, and on the 26th May, 1888, a like deed was executed by respondent to said Mary Petersen for said lot three, (3,) in block O; the sole inducement to the execution of the said deeds of conveyance by respondent being the legal duty imposed upon respondent by said act of the legislature, and the fair and adequate price paid for said lots by the purchasers thereof. And orators further show that the price paid by them and said Newgass for said lots in block O and P were fair and adequate in themselves, and more apparently so when compared with the prices paid for more eligible lots by the said George and Henry Pfeiffer, Maloney, and Petersen, as above stated.

"And orators further allege that, some time in years A. D. 1888 and 1889, respondent, disregarding your orators' rights as above set forth, of which respondent had notice, took possession of said lots 1 and 2, in block P, and lot 6, in block O, and appropriated the same to its own use, erecting thereon various structures, in palpable violation of respondent's trust duty to your orators under said act of the legislature. And orators further allege that from the time your orators and said Newgass purchased said lots 1 and 2 in block P, and 6, in block O, up to the year 1890, state, county, and city, as

well as municipality, taxes were assessed thereon, as the property of your orators or of your orators and said Newgass, and paid by your orators, and that during all that period they never knew or heard that any doubt existed as to the right of the city of Pensacola to sell and convey said lots to your orators and said Newgass, or of the existence of said act of the legislature intended to perfect titles like theirs, and that it was in fact in the fall of the year 1890 that your orators first acquired such information. And your orators further aver that immediately after being so informed they employed H. C. Semple, attorney at law of Montgomery, Ala., to proceed to Pensacola for the purpose of asserting their right to said lots, which he having done, found the said lots had been appropriated by respondent to its own use, in violation of the trust duty imposed upon respondent by said act of the legislature, and which trust duty it refused to execute in behalf of your orators, as it had done in the case of other beneficiaries under said legislative acts."

The prayer of the bill was for a decree that respondent shall, by its proper officer, and under its corporate seal, execute unto orators a deed of conveyance of said lots 1 and 2, in block P, and lot 6, in block O, according to the said plan of Theodore Moreno, adopted by the city of Pensacola on 24th of July, A. D. 1866; that said respondent shall surrender the possession of said premises unto orators upon their demand, or that of their duly-authorized agent; and also that respondent shall be decreed to pay to orators a reasonable ground rent for the use of said premises, from the time respondent took possession of the same up to such time as respondent shall surrender the same to orators; and for such other and further relief as may seem meet and agreeable to equity.

The defendant filed a general demurrer. The demurrer was overruled, and the defendant filed an answer. The answer repeats the demurrer, and alleges, substantially, that the property in controversy had been a part of a public square dedicated to the public ever since prior to A. D. 1763; that, at the close of the late war, it, with other public places, including streets, passageways, alleys, parks, and lots dedicated for public uses, such as courthouses, jails, academies, and schools, were sold by the said city, or under execution and decrees against it; that upon many of these lots large buildings were erected by the purchasers, and, as some of the lots were no longer useful for public purposes, the defendant procured the passage of the act of the legislature mentioned, so that, in the discretion of its commissioners, such persons as should have paid full value should have conveyances made to them, wherever, in the opinion of the board, it should seem equitable. The answer further alleged as follows:

"That after the passage of the act this defendant sold two pieces of its public property, in many cases confirmed the title to persons in possession of other pieces purchased as aforesaid, upon their paying to this defendant such sums as its commissioners considered to be sufficient to justify the defendant in relinquishing its title to said pieces, in some instances refused to confirm to the applicants therefor, and in a few instances, when the applicants for confirmation had erected large and valuable buildings upon the property purchased, and the defendant was convinced that the prices originally paid were adequate at the time of payment, this defendant confirmed the titles, upon the grounds of occupancy of the purchaser, of the adequacy of the purchase price, and of the making of valuable improvements by the

applicant, and of the want of absolute need of the locality by this defendant for public purposes. Among this latter class were embraced the persons mentioned in the bill as the persons who purchased lots in O and P, as set forth in the bill, and to whom has been confirmed the title acquired by them, each of the said persons having, immediately upon the purchase, taken possession of said property, and erected large and valuable buildings thereon.

"That it is not true, as alleged in said bill, that the defendant has confirmed all the title to lands sold as aforesaid, except that of complainants. for, as hereinbefore set forth, some applications have been rejected; some have been granted only upon the payment of amounts, in many instances, many times greater than the original purchase price. In some cases, no applications have ever been made for confirmation, and, in one case, consideration upon the application is now pending. That no confirmation has ever been granted, and no right to confirmation considered, by the defendant, except upon a petition setting forth the circumstances and the equity relied upon, and that no application was ever made by the complainants, or those from whom they purchased, until shortly before the filing of this bill, and about four years after the passage of the act permitting such confirmation. That years prior to such application the applications of the persons who had purchased the other portions of lots O and P, which persons, as aforesaid, entered into possession of said portions, and valuably improved the same for a score of years, had been presented to this defendant, and confirmation of title to them had been made. That prior to any application by the complainants the public building of the defendant, in which were the police offices, public offices, jail, and municipal court room, were destroyed by fire, and the defendant was compelled to rent accommodations for the said purpose at a large rental, which this municipality, being entirely bankrupt, was scarcely able to pay. That the defendant was also without locality for a pound, and yard in connection therewith, necessary for the impounding of stock running at large in violation of the ordinances, and also without locality for the erection of a house for the hook and ladder truck and horses, which were used in the public service of the said city. The only place available for such purposes. belonging to the said city, was the lot indicated upon the plan annexed to the said bill as the market lot, which was too small to accommodate all of the said city purposes, and was situated on Palafox street, the main street of the said city, and of value at least four times greater than that of the lots claimed by the complainants in the said bill. That the defendant, through its commissioners, taking into consideration the facts —which it alleges to be facts—that no other available space, except the market lot before mentioned, could be acquired by the defendant for the said public purposes without a large expenditure of money, when it had not a cent to expend, (the said mentioned market lot was too small, and was of a value which rendered a sale of it necessary for the purpose of meeting the debts of the defendant, and meeting its current expenses;) that the property in possession of the other purchasers in, lots O and P was covered by large and valuable brick buildings, while the lots claimed by the complainants were, and have always been, unoccupied and unimproved,—concluded that it was equitable to the said other purchasers, and to the public, for which it was trustee, that the said market lot should be sold for the public benefit, and that the lots claimed by the complainant should be occupied by defendant for the public uses heretofore mentioned; and accordingly the said market lot was sold, and the money therefrom applied as aforesaid, and the defendant took possession of the lots claimed by the complainants, and erected thereon a brick public building, a brick pound, and a brick house for the said hook and ladder truck and horses, at a cost of several thousand dollars.

"That the said lot was sold, and said buildings were completed, without objection from the complainants, and without intimation from them that they desired 'a confirmation of such title as they had acquired, and more than two years before any application was made by the complainants, or any one else, to the defendant, for a confirmation of such title. That this defendant, has absolutely no ground upon which said buildings could be erected, has

no money with which to purchase such ground, or to build such buildings, and if it be deprived of such buildings, which it now occupies, will be entirely without the necessary public buildings, or the means of procuring them."

A replication was filed by complainants, and testimony taken by them, showing the time of erection of buildings by defendant, the payment of taxes by complainants, and want of knowledge of complainants of the erection of such buildings until after their erection.

Complainants filed a writing admitting all the statements of facts in the answer to be true, when relevant, and not contradicted by the testimony of the complainants.

On the hearing a final decree was rendered against the defendant, requiring it to execute to complainants a deed to the property in controversy, or, in the alternative, to pay the price paid by the complainants therefor, with 8 per cent. per annum interest from the time of purchase to date.

The statute of Florida upon the construction and effect of which the case, in large part, depends, is as follows:

"An act to permit the Provisional Municipality of Pensacola to sell certain of its public property, and to quiet the title to certain other of said property already sold.

"Whereas, certain portions of the public places within the Provisional Municipality of Pensacola have been heretofore sold by the city of Pensacola and valuable consideration received by it therefor;  and whereas, certain other portions of the public places are not needed for public uses and it is desirable to sell the same;  now, therefore, be it enacted by the legislature of the state of Florida:

"Section 1. That the Provisional Municipality of Pensacola be and is hereby authorized to execute deeds of conveyance to the holder of any public property of or in said municipality to any such property so held, wherever it shall be shown to the satisfaction of the board of commissioners that the city of Pensacola sold the said property and received value therefor from said holder or his grantor, and it shall appear equitable to said board that such conveyance should be made, due execution and delivery of such deed of conveyance shall vest the title in the grantee therein, his heirs and assigns forever.

"Sec. 2. Be it further enacted, that the said board of commissioners shall have power to sell to any purchaser any of the public places in, or of, said municipality, which are in the opinion of the said board unnecessary for streets, alleys, parks, squares or other public uses, and a deed executed and delivered by the said municipality, after due receipt of the purchase money—shall vest the title in the purchaser and his heirs and assigns forever. Approved June 2d, 1887."

In this court the appellant assigns as errors (1) the overruling of the demurrer to the bill of complaint; (2) the rendition of the final decree against the defendant.

There is no doubt that the bill should, in the first instance, have stated more specifically whether the property, with respect to which it had been filed, was proprietary or public property, so as to enable the court to see whether such property was within the scope of the statute of Florida above quoted, or complainants' right to relief stood upon other grounds; and if the defendant and appellant had insisted on its demurrer the complainants would have been driven to allege, at least, that the doubts respecting their title to the lots in question arose from the fact that the prop-

erty was not proprietary, but held in trust for public uses. Defendant and appellant, however, did not stand upon the demurrer, but answered over, and in the answer expressly set forth that the property in question was public property.

"An answer setting forth material facts, which should have been stated in the bill, but were omitted, is a waiver of the right to object to the bill for cause of the omission." Cavender v. Cavender, 114 U. S. 464, 5 Sup. Ct. Rep. 955.

When it is desired to bring up the judgment of the lower court, upon demurrer, for examination, the party must stand by his demurrer, and not plead over in bar. Aurora City v. West, 7 Wall. 92; Railroad Co. v. Harris, 12 Wall. 84; Cavender v. Cavender, supra.

The case shows, as appears by the full statement herein made, that the appellant in this court, defendant in the court below, pretending to have the right to sell and convey certain real property, sold and attempted to convey the same, receiving and holding the purchase price, but, after recognizing the ownership and possession of the purchaser, resumed possession of the property, and thereafter, having full power to convey, refuses to convey or restore the property, and neglects and refuses to return the purchase money.

The main contention is that this case is not one which entitles complainants to any relief in a court of equity, and that, if the averments of their bill are true, they have a complete and adequate remedy at law. This defense is included in the issue made by the demurrer originally filed; but it is repeated, and persisted in, in the answer. As we view the case, it seems difficult to present a clearer case for relief on the ground of equity. The appellant has obtained the appellees' money under an agreement to sell and convey; and unjustly, although having the power to convey, refuses to convey or return the price. Jurisdiction to decree specific performance of a contract of sale of real estate is one of the well-established heads of equity jurisprudence. Pom. Eq. Jur. §§ 108, 110. Story says:

"It is well known that, by the common law, every contract or covenant to sell or transfer a thing, if there is no actual transfer, is treated as a mere personal contract or covenant, and as such, if it is unperformed by the party, no redress can be had, except in damages. This is, in effect, in all cases, allowing the party the election either to pay damages, or to perform the contract or covenant, at his sole pleasure. But courts of equity have deemed such a course wholly inadequate for the purposes of justice; and, considering it a violation of moral and equitable duties, they have not hesitated to interpose, and require from the conscience of the offending party a strict performance of what he cannot, without manifest wrong or fraud, refuse." Story, Eq. Jur. (5th Ed.) § 714.

But it is said in this case that the complainants have a complete and adequate remedy at law, and suggest that, if it is the absolute duty of the appellant to convey the property in question to the appellees, a mandamus would be a complete remedy. To this two objections present themselves—First, that the remedy by mandamus cannot be invoked as an original proceeding in the

courts of the United States, (Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. Rep. 633,) and that, although the local law may afford such remedy, the jurisdiction of the United States court to afford such remedy as it can furnish is not thereby ousted, (Barber v. Barber, 21 How. 582; Payne v. Hook, 7 Wall. 425; McConihay v. Wright, 121 U. S. 201, 7 Sup. Ct. Rep. 940.) In this connection our attention is called to the case of Smith v. Bourbon Co., 127 U. S. 105, 8 Sup. Ct. Rep. 1043. An examination of this case shows that where, in the same bill, equity relief was sought against one defendant, and legal relief against another,—there being no privity between the last named and the complainant,— it was held by the supreme court that the equitable relief should be granted, and the legal relief denied; and the case would be entirely applicable to the instant one, if we had here two defendants, one owing equitable, and the other legal, relief, but entirely disconnected in their relations.

And, second. under the act in question, the complainants would be without relief on an application for mandamus in the local court. The appellees do not assert a clear legal right, but rather an equitable one, and the peculiar wording of the statute under which relief is sought is such that the suggestion of equitable considerations on the part of the Provisional Municipality of Pensacola would entirely defeat a remedy by mandamus. It is also suggested in the brief of the learned counsel for the appellant that an action of ejectment would furnish a complete remedy to the complainants; but how this can be, when it is conceded that the complainants have not a legal title, because of the original want of power to convey on the part of the municipality, we are unable to see.

It follows that the appellant cannot complain of the overruling of the demurrer, and that his first assignment of error is not well taken.

The second assignment of error involves the merits of the case. Prior to the passage of the enabling act, in 1887, the case was that the municipality of Pensacola, ultra vires, had sold, and delivered possession of, the lots in question, receiving and retaining the purchase price, and fully recognizing the purchaser's title. Its right, under these circumstances, was to repudiate the sale, and thereon its duty was to return the purchase price. The enabling act of 1887, however, changed the status of the case. Considering the said act as permissive, only, and not mandatory, it cannot be denied that thereby the municipality had power to carry out its contract in full, and convey the premises, or to rescind the same, in which last event, equity and good conscience required the return of the purchase money. As the appellees say, "it [the municipality] then stood as a private person, to all intents and purposes, subject to all the rules of conduct and estoppel applicable to other persons." As was said by the supreme court in Marsh v. Fulton Co., 10 Wall. 676-684, "the obligation to do justice rests upon all persons, natural and artificial, and, if a county obtains the money or property

of others without authority, the law, independent of any statute, will compel restitution or compensation." See Louisiana v. Wood, 102 U. S. 294; Chapman v. County of Douglass, 107 U. S. 348-355, 2 Sup. Ct. Rep. 62. And if the municipality had the power of election, and proposed to change the status of the case, it ought, if not at the earliest moment, within a reasonable time, at least, to have rescinded the contract and returned the consideration, or to have confirmed the contract and made a deed. See Oil Co. v. Marbury, 91 U. S. 592; Metcalf v. Williams, 144 Mass. 452, 11 N. E. Rep. 700; Broom, Leg. Max. (8th Ed.) 295. In this case the appellant retained the purchase money, gave no notice of a desire to rescind, save such as could be inferred from taking possession of the property (vacant lots) shortly before the institution of this suit, and continued to levy and collect taxes on the property, as belonging to the appellees, until and including the year 1891.

The decree in the case, which is assigned as erroneous, requires the appellant to carry out the contract, or return the consideration. It seems to be perfectly fair to the appellant, as requiring nothing but equity. Unless the appellant is to be allowed to hold the property sold, and retain the purchase money, under the plea of necessity, we fail to see wherein it can complain. Its answer in the case sets up no equity,—only necessitous circumstances. Further than this, we are inclined to the opinion that the act of 1887 is more than permissive. It is mandatory. The authorities go to the extent that when authority is given under a statute, whether by the word "may," or other permissive words, for an act to be done by a public officer, and it concerns the public interest, or is for the benefit of third persons, it is mandatory. There seems to be no doubt that if the words, "and it shall appear equitable to said board that such conveyance should be made," had been omitted from the first section of the statute, the statute would have been mandatory. Suth. St. Const. §§ 461, 462, and cases cited; Supervisors v. U. S., 4 Wall. 435. With those words in the statute, it would seem, under the authority of Supervisors v. U. S., supra, that unless there should be, in fact, equitable reasons against making such conveyance, the statute would still be mandatory. The true construction of the statute seems to be that thereby the incapacity of the vendor to sell and convey is entirely removed. The contracts of sale of public property theretofore made are valid and enforceable, if otherwise than for want of power they would have been enforceable; that is, if, under equitable principles, the power being conceded, the vendee would be entitled to a specific performance. The words, "and it shall appear equitable to said board," can refer only to existing, well-defined equities, and ought not to be construed into vesting an arbitrary discretion in the municipality.

The answer in the case, as said above, sets forth no equities, and the learned counsel, in argument, suggests none, as existing in favor of the municipality of Pensacola, save that the appellees had neglected to build upon and improve the lots in question.

We can easily see how, if the appellees had built upon and im-

proved the lots in question, it would have raised an equity in their favor when the municipality elected to rescind; but we wholly fail to see how the failure of the appellees to build upon and improve their own property could raise an equity in favor of the municipality. But, be this as it may, equity will not permit the municipality to hold both the property and the purchase price; and, as the decree appealed from permits the municipality to rescind the contract of sale on return of the purchase price, we approve the same.

We have considered the other points discussed at the bar, and have examined the authorities relied upon in support thereof, but an elaboration of them is unnecessary, as the conclusions resulting do not affect the jurisdiction of the court a qua, nor, in our judgment, the equity of the decree appealed from. Affirmed, with costs.