## UNITED STATES v. CORNELL STEAMBOAT CO.

(Circuit Court of Appeals, Second Circuit. March 1, 1905.)

No. 107.

1. SALVAGE—CLAIMS AGAINST UNITED STATES—JURISDICTION OF DISTRICT COURT.

Tucker Act March 3, 1887, c. 359, §§ 1–7, 24 Stat. 505, 506 [U. S. Comp. St. 1901, pp. 752–755], conferring jurisdiction upon District Courts over certain claims against the United States, gives such courts authority to entertain petitions for a salvage award where the government has been benefited by salvage service.

2. CUSTOMS DUTIES—DAMAGED MERCHANDISE—AUTHORITY OF SECRETARY OF THE TREASURY TO ABATE DUTIES.

Under section 2984, Rev. St. [U. S. Comp. St. 1901, p. 1958], under which "the Secretary of the Treasury is hereby authorized * * * to abate or refund the amount of impost duties paid or accruing" upon imported merchandise damaged or destroyed accidentally "while in custody of the officers of the customs," the Secretary may not refuse to allow the refund arbitrarily or capriciously. Where all the facts enumerated in said section were presented to him undisputed, it would be assumed that that would satisfy him that the case was within the terms of the section.

3. SAME—SALVAGE—DUTIES SAVED TO THE UNITED STATES.

Where imported merchandise while in customs custody on board a vessel was saved from destruction by fire, held that these facts brought the case within section 2984, Rev. St. [U. S. Comp. St. 1901, p. 1958], under which the government would have been liable to refund the duties already paid on the merchandise if it had been destroyed; that the gov-

ernment had an interest which should respond to those whose services prevented the loss which it would have sustained through refund; and that the salvors were entitled to a salvage award on the basis of the amount that had been thus put at risk.

Wallace, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

'This cause comes here upon writ of error to review a judgment of the District Court, Southern District of New York (130 Fed. 480), in favor of the defendant in error, which was plaintiff below. The claim against the United States was prosecuted under the Tucker act of March 3, 1887, c. 359, 24 Stat. 505 (1 Supp. Rev. St. 559 [U. S Comp. St. 1901, p. 752]), which confers concurrent jurisdiction upon the Court of Claims and the several District and Circuit Courts in suits against the United States for "all claims founded upon the Constitution of the United States, * * * or upon any contract expressed or implied with the government of the United States, or for damages liquidated or unliquidated in cases not founded in tort in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty if the United States were suable."

Arthur M. King, Asst. U. S. Atty.
R. D. Benedict, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts). The facts out of which the claim arises are these: The firm of B. H. Howell, Son & Co. imported a lot of sugar into the port of New York, and by the act of importation became indebted to the government for customs duties thereon. The market value of the sugars in that port on January 9, 1901, was $18,127.74, which included the duties assessed at $6,000. The sugar came into the possession of the customs officers, the government having a lien upon the same for the duties. The duties were paid, but the sugar had not been delivered to the consignee, remaining in the custody of the officers of the customs on January 9, 1901. It was on board a certain lighter called the "Bangor," in the waters of the port of New York, and on the day named was in danger of being destroyed by fire; whereupon the tug R. G. Townsend, belonging to the plaintiff below, at great risk and peril saved the lighter and the cargo of sugar from destruction by said fire. Thereafter the owners of the Bangor settled with the steamboat company for salvage services, and the last-named company brought a libel in the District Court, Eastern District of New York, against "1,883 bags of sugar lately on board the lighter Bangor" to recover for salvage services rendered to the cargo. The cause came on for trial. It was found that libelant was entitled to salvage, and the award was fixed at 10 per cent. of the value of the property saved. The court was satisfied that had the cargo been destroyed consignees would have been entitled to a rebate of the duties paid ($6,000), under section 2984, Rev. St. U. S. [U. S. Comp. St. 1901, p. 1958], and therefore, concluding that the government was interested in the sugar to that amount, awarded 10 per cent. against the consignee only on the balance left after deduct-

ing that sum from the market value. No award was made against the United States in that proceeding in rem in admiralty, presumably because the court was satisfied that it had no jurisdiction to bring the government in as a party to such suit. The Davis, 10 Wall. 16, 19 L. Ed. 875.

Thereupon the plaintiff filed under the Tucker act a petition, the equivalent of a complaint, bill, or libel, setting forth the facts above recited. Defendant demurred; demurrer was overruled, with leave to answer; answer was served, but was subsequently withdrawn, and the case submitted to the court upon the pleadings for a written opinion setting forth the specific findings of fact and conclusions of law, and rendering judgment thereon in conformity to the practice under that act.

If it be assumed that the government had such an interest in the sugar as to be directly benefited by the salvage service, the District Court, under the Tucker act, would have jurisdiction to entertain petition for a salvage award. It is unnecessary to add anything to the discussion of this subject which will be found in the opinion of the Court of Appeals for the Fourth Circuit (U. S. v. Morgan, 99 Fed. 570, 39 C. C. A. 653). The important and fundamental question in the case is as to the construction of section 2984. It reads as follows:

"Sec. 2984: The Secretary of the Treasury is hereby authorized upon production of satisfactory proof to him of the actual injury or destruction, in whole or in part, of any merchandise, by accidental fire, or other casualty, while the same remained in the custody of the officers of the customs in any public or private warehouse under bond, * * * or while in custody of the officers of the customs and not in bond, or while within the limits of any port of entry, and before the same have been landed under the supervision of the officers of the customs to abate or refund, as the case may be, out of any moneys in the treasury not otherwise appropriated, the amount of impost duties paid or accruing thereupon; and likewise to cancel any warehouse bond or bonds, or enter satisfaction thereon in whole or in part, as the case may be."

Provision for such abatements or refunds is made in section 3689 [U. S. Comp. St. 1901, p. 2460]:

"There are appropriated, out of any moneys in the treasury not otherwise appropriated, for the purposes hereinafter specified, such sums as may be necessary for the same respectively; and such appropriations shall be deemed permanent annual appropriations. * * * For refunding duties paid or accruing on goods, wares, or merchandise injured or destroyed by accidental fire or other casualty while in the custody of the officers of customs, in any public or private warehouse, * * * or after their arrival within the limits of any port of entry of the United States, and before the same have been landed under the supervision of the officers of the customs."

It is contended by plaintiff in error that under these sections there is confided to the Secretary of the Treasury an absolute and irreviewable discretion to refund or to refuse so to do; that "if the sugar had been entirely destroyed by fire there was no legal obligation on the part of the Secretary of the Treasury to refund the duties paid, even though manifest justice indicated that a petition for refund should be granted." In support of this proposition there is cited the decision of the Court of Appeals for the Sixth Circuit in

D. M. Ferry & Co. v. U. S., 85 Fed. 550, 29 C. C. A. 345. In that case as in this imported merchandise which had paid duty was destroyed by fire while in the custody of the customs officers, and petition was filed under the Tucker act to obtain a refund of duties. It appeared that more than a year before the passage of that act a claim for the same refund had been presented to the Secretary of the Treasury and by him rejected. This was sufficient to defeat the plaintiff, because the section of the Tucker act which gave jurisdiction to the courts expressly provided that nothing therein "shall be construed as giving to either of the courts therein mentioned jurisdiction to hear and determine * * * claims which have heretofore been rejected or reported on adversely by any court, department, or commission authorized to hear and determine the same." The Court of Appeals, however, discussed section 2984 at considerable length. It held that Congress might, if it saw fit, make the Secretary the final arbiter in any class of cases arising under the revenue laws to determine in a quasi judicial manner whether by virtue of those laws any claim against the government has arisen in favor of the petition, and that, "as neither section 2984 nor any other part of the revenue laws gave to the federal courts appellate power to revise the decision of the Secretary of the Treasury, under the section he was made the final judge or tribunal to decide upon the validity of the claim in question." Undoubtedly it is the Secretary, not the court, who is to pass upon the proofs; it is his judgment, not the court's, which is to be satisfied that the facts authorizing refund exist. In the Ferry Case he rendered a decision that "on the facts stated the petitioner did not bring his case within the section, and that therefore the petition filed under the section must be rejected." The court had no power to review or revise that decision, and therefore threw out the claim. But if, on the other hand, the facts stated by the petitioner brought his case within the section, and such proof was presented that the Secretary became satisfied of the existence of those facts, we do not find in the Ferry Case authority for the proposition that nevertheless the Secretary might refuse to allow the refund arbitrarily and capriciously. On the contrary, there is high authority the other way. In Supervisors v. U. S., 4 Wall. 435, 18 L. Ed. 419, the court considered a statute which provided that a board of supervisors "may, if deemed advisable," levy a special tax to pay certain indebtedness. It held the language to be peremptory, saying:

"The conclusion to be deduced from the authorities is that where power is given to public officers in the language of the act before us, or in equivalent language, whenever the public interest or individual rights call for its exercise, the language used, though permissive in form, is in fact peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless. In all such cases it is held that the intent of the Legislature, which is the test, was not to devolve a mere discretion, but to impose a positive and absolute duty."

See, also, City of Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560.

An interesting case to the same effect, where the language construed was, "whenever it shall be shown to the satisfaction of the * * * commissioners that the city sold * * * and received value therefor, * * * and it shall appear equitable to them to make such conveyance," is found in Provisional Municipality v. Lehman, 57 Fed. 324, 6 C. C. A. 349. In U. S. v. Thoman, 156 U. S. 353, 15 Sup. Ct. 378, 39 L. Ed. 450, where a consideration of the full text of the statute led the court to the conclusion that the use of the word "may" was intended by the Legislature to be permissive only, they quoted with approval from Minor v. Mechanics' Bank, 1 Pet. 46, 7 L. Ed. 47, the statement that: "No general rule can be laid down upon this subject further than that that exposition ought to be adopted in this as in other cases which carries into effect the true intent and object of the Legislature in the enactment."

It seems quite apparent that the intent and object of the Legislature was to afford relief to unfortunate importers who might be able to satisfy the Secretary by sufficient proof that they came within the terms of the section. So careful was the Legislature to secure that relief that it provided a perpetual annual appropriation from which the repayments might be made. It would certainly defeat that object if, after being satisfied that the proofs established all the prerequisite facts which the section called for, the Secretary might nevertheless arbitrarily refuse to make the payment.

In the case at bar all question as to whether the proof produced of actual injury, etc., by accidental fire while in the custody of the customs officers was satisfactory to the Secretary is eliminated. The case is presented on a demurrer which concedes all the facts averred. It must therefore stand conceded that had the salvors not intervened a loss would have occurred under circumstances which would have brought the importer within the provisions of section 2984. It cannot be supposed that the Secretary would find the undisputed facts otherwise than as they were proved to him to be; it may fairly be assumed that undisputed facts would be susceptible of convincing proof; and since all the facts enumerated in the section are conceded it must be presumed that their presentation to the Secretary would satisfy him that the importer was within the terms of the section.

The next question is whether, by reason of its liability to refund the $6,000 duties in case of the destruction of the property, the United States had such an interest in that property that salvors, who by saving the property save the government from paying out such sum, may be entitled to a salvage award on the basis of the money thus put to risk.

Counsel for the petitioner calls attention to an English authority where the proposition established was in principle the same as that presented here. Five Steel Barges, 15 P. D. Rep. 142. In that case salvage services were rendered to five barges built by defendant for the government, and which were being towed from Chepstow to Portland. At the end of the towage two of the barges were given up to the government. An action of salvage in personam was brought against defendants in respect to these two barges, and in

rem against the remaining three. It was argued that plaintiffs were not entitled to recover as against the two barges, because they were not asserting their right as a maritime lien, but had instituted their action in personam. The court said:

"As to the two which have been given up to the government, I think it is perfectly clear, on the authorities, that an action in personam lies against the owners of a vessel saved, even though the property has been transferred to others and the lien lost. In this case, however, the property does not appear to have been in the defendants, because it would, I think, under the contract, be in the government. But on this point I am of opinion that the right to sue in personam is not confined to the case of the defendant being the actual legal owner of the property saved. I think it exists in cases where the defendant has an interest in the property saved, which interest has been saved by the fact that the property is brought into a position of security. The jurisdiction which the court exercises in salvage cases is of a peculiarly equitable character. The right to salvage may arise out of an actual contract; but it does not necessarily do so. It is a legal liability arising out of the fact that property has been saved; that the owner of the property, who has had the benefit of it, shall make remuneration to those who have conferred the benefit upon him, notwithstanding that he has not entered into any contract on the subject. I think that proposition equally applies to the man who has had a benefit arising out of the saving of the property. In this case the defendants were under contract with the government to supply them with barges at a certain price. Payment was to be made by certain installments, of which only one remained unpaid at the time of the services. I think, if * * * these installments were all paid on condition that the barges should be delivered all within twelve months of the date of the contract, it would follow that, if defendants had not been in a position to deliver the barges within the twelve months, then either they would have been liable in damages for not performing the contract, or liable to make restitution of the installments which had been paid them on conditions not fulfilled by them. It appears to me then that they had substantially an interest to the full amount of the barges at the time of the services, and that the same moral obligation to which the law has given force in the case of an owner applies to those who have an interest in the property. This is certainly the business-like view of the matter."

In The Port Victor, 9 Asp. Mar. Law Cas. (N. S.) 163, where government stores were being carried at the risk of charterers, the charterers were held to a personal liability to pay salvage because they "were directly interested in the preservation of the goods and the salvage service was a direct benefit to them." Justice Jeune cited The Five Steel Barges with approval, holding that "a man who has had a benefit arising out of the saving of property is liable to a claim for salvage no less than the actual owner of it." The Port Victor was affirmed and the principle laid down in The Five Steel Barges favorably commented on by the Court of Appeals in 9 Asp. Mar. Law Cas. (N. S.) 183.

We are of opinion that the government in the case at bar had an interest in the sugar to the extent of the duties, it had a lien on the sugar till the duties were paid, and, since they were paid under a statute which provided for their refund in case of the destruction of the sugar by accidental fire, they had an interest which should in all fairness respond to the individuals whose salvage services prevented the loss which the government would sustain by making such refund.

The judgment of the District Court is affirmed.

WALLACE, Circuit Judge (dissenting). I cannot concur in the judgment of the court. I think that the statute (Rev. St. § 2984 [U. S. Comp. St. 1901, p. 1958]) is permissive, and not mandatory, and was intended to authorize the Secretary of the Treasury to remit any duties which in justice and according to his judgment the importer ought not to lose. If it is mandatory the Secretary has no discretion, and the government may become liable to refund duties on merchandise injured or destroyed without the fault of any of its officers, and in their custody merely for the accommodation of the importers, and under circumstances in which the loss should properly and reasonably fall upon the importer rather than upon the government. The intention of Congress to subject the government to such a liability in cases where the importer would have no legal claim against an individual under the same circumstances is not to be inferred in the absence of any more significant evidence than the phrase, "the Secretary of the Treasury is hereby authorized." The words "hereby authorized" are equivalent to "may." Even when the word "shall" is used in statutes, it is, as against the government, to be construed as "may," unless a contrary intention is manifested. R. R. Co. v. Hecht, 95 U. S. 169, 24 L. Ed. 423. Clearly "may" should not be construed as against the government as "shall," unless this meaning is compelled by the nature of the power confided, or because the exercise of the power to its fullest extent is a plain duty to those interested in it.