## P. DE RONDE & CO., Inc., v. UNITED STATES SUGAR EQUALIZATION BOARD, Inc.

(District Court, D. Delaware. April 17, 1924.)

No. 531.

1. **United States ⬚93—Power to recognize claims which could obtain no recognition in court of law.**

Congress has power to recognize and provide for payment of claims against government which could obtain no recognition in court of law, but which grow out of general principles of right and justice, and are based solely on considerations of moral or honorary nature.

2. **United States ⬚93—Recognition of moral claims against government depend solely on Congress.**

Recognition of moral or honorary claims against government depend solely on Congress, and such claims must be left to discretion of that body.

3. **United States ⬚113—Congress may decide facts with respect to moral claims against government.**

Congress may decide for itself all facts with respect to moral or honorary claims against the government, or may prescribe principal or major premise by which all claims to be paid must be treated, and leave to specified tribunal or officer determination of what claims fall within rule.

4. **Constitutional law ⬚60—Congress cannot delegate full legislative power as to moral claims against government.**

If Congress confers on officer or tribunal, not only power to determine some specified fact or state of things in respect to moral or honorary claims against government, but also power to make its own controlling rule with respect to their payment, it delegates full legislative power and discretion, and its act is invalid.

5. **Statutes ⬚217—Committee reports may be considered in construing congressional resolution.**

Committee reports may be resorted to in ascertaining intention of Congress in passing resolution, as expressed therein.

6. **Statutes ⬚227—What officer is empowered to do peremptory as to those benefited.**

What a public officer is empowered by Congress to do for others, and it is beneficial to them to have done, law holds that he ought to do, and that language, though permissive in form, is in fact peremptory.

7. **United States ⬚94—Resolution "authorizing" President to pay claim held peremptory.**

Resolution of Congress by which President was "authorized to require" United States Sugar Equalization Board, Incorporated, to pay sugar losses for which government morally responsible, *held* mandatory.

8. **United States ⬚75½, New, vol. 21A Key-No. Series—Fund to become due United States from Sugar Equalization Board subject to equitable assignment, and in effect assigned by resolution of Congress.**

Fund to become absolutely due United States on liquidation and winding up of Sugar Equalization Board, organized under Act July 1, 1918, is subject to equitable assignment, and is in effect assigned by resolution of Congress authorizing President to require board to pay losses for which government morally responsible.

9. **Assignments ⬚48—Debtor need not be expressly directed to pay over money to assignee.**

It is not essential to equitable assignment of funds that debtor, agent, or depositary should be expressly directed to pay over to assignee.

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**10. Injunction ⊜➞75—Equitable assignee of fund in hands of Sugar Equalization Board entitled to injunctive relief to prevent payment.**

Sugar company, in effect equitable assignee of fund in hands of United State Sugar Equalization Board by congressional resolution, was entitled to injunctive relief to prevent threatened payment by board of fund into treasury, where it would probably be beyond reach of company, though there was no privity between company and board.

In Equity. Bill by P. De Ronde & Co., Inc., against the United States Sugar Equalization Board, Incorporated. On motions for preliminary injunction and to dismiss bill. Preliminary injunction granted.

Robert H. Richards, of Wilmington, Del., for plaintiff.

William A. Glasgow, Jr., of Philadelphia, Pa., Willard Saulsbury and Charles F. Curley, both of Wilmington, Del., and Edwin P. Shattuck, of New York City, for defendant.

MORRIS, District Judge. P. De Ronde & Co., Inc., the plaintiff, having sustained in a certain transaction, involving sugar, losses for which it believed the United States to be morally, though not legally, responsible, obtained in January, 1923, for its relief, the adoption by Congress of a joint resolution whereby the President was "authorized to require" the United States Sugar Equalization Board, Incorporated, the defendant, to liquidate and adjust the entire transaction, paying to the plaintiff such sum as might be found by the defendant to represent the actual loss sustained by the plaintiff in the transaction. The defendant, which was organized under the laws of the state of Delaware, in July, 1918, at the instance and direction of the President of the United States, acting under the authority of the "national defense" provision of an Act of Congress of July 1, 1918 (40 Stat. 634, 635), for the general purpose of buying and selling sugar, and having a total authorized capital stock of $5,000,000, all of which was paid for at par by the United States and is now owned by it, was not, in fact, required by the President to do any of the things specified in the resolution. It has not done any of them. More pertinently, it has neither "found" nor paid to the plaintiff the amount of its actual losses sustained in the transaction.

In July, 1923, the corporate existence of the defendant ceased and expired by the express limitation of its charter. The defendant proceeded with the liquidation of its affairs. On October 6, 1923, the President of the United States wrote to the defendant, expressing his desire that the defendant be at once completely wound up and its final resources remitted to the treasury of the United States. Thereupon, on November 2d following, the plaintiff filed its bill of complaint herein, praying, among other things, that the defendant be enjoined from disposing of or conveying its property, and from dividing its capital stock, and from in any manner distributing its assets to its stockholder, without first having liquidated, ascertained, and paid to the plaintiff the sum of money which represents the actual loss sustained by the plaintiff in the transaction referred to in the joint resolution. The cause is now before the court on a motion for a preliminary injunction and a motion to dismiss the bill of complaint.

[1] The primary question raised by the pending motions is whether Congress has the power to recognize and provide for the payment of claims against the government which could obtain no recognition in a court of law, but which grow out of general principles of right and justice and are based solely upon considerations of a moral or honorary nature. That Congress has such power is not only settled (United States v. Realty Co., 163 U. S. 427, 440, 16 Sup. Ct. 1120, 41 L. Ed. 215), but is here conceded by the defendant.

The question next arising is whether Congress so exercised that power in the passage of the joint resolution as to confer upon the plaintiff any rights, in the absence of affirmative action by the President. The plaintiff concedes that, if the joint resolution gave a mere discretionary power to the President, the plaintiff, in the absence of the favorable exercise of that discretion, is without right under the resolution, and so without standing in this suit. It contends, however, that the intention of Congress as expressed in the resolution was not to devolve a mere discretion, but was to impose a positive and absolute duty, upon the President and the defendant, that those duties are ministerial and mandatory, and that hence the plaintiff acquired, even in the absence of action by the President, rights under the resolution which it is entitled to have enforced by a court of equity.

Was the President vested with discretion by the resolution, or burdened thereby with a mandatory ministerial duty? The resolution reads thus:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled, that the President is authorized to require the United States Sugar Equalization Board (Incorporated) to take over from the corporation P. De Ronde and Company (Incorporated) a certain transaction entered into and carried on by said corporation at the request and under the direction of the Department of Justice, which transaction involved the purchase in the Argentine Republic, between the 15th day of June, 1920, and the 22d day of June, 1920, of five thousand tons of sugar, the importation thereof into the United States and the distribution of a portion of the same within the United States, and to require the said United States Sugar Equalization Board (Incorporated) to dispense [dispose] of any of said sugar so imported remaining undisposed of and to liquidate and adjust the entire transaction, paying to the corporation aforesaid such sum as may be found by said board to represent the actual loss sustained by them in said transaction and for this purpose the President is authorized to vote or use the stock of the corporation held by him, or otherwise exercise or use his control over the said United States Sugar Equalization Board and its directors, and to continue the said corporation for such time as may be necessary to carry out the intention of this joint resolution." 42 Stat. 1226.

[2-4] Between the views of the plaintiff and those of the defendant with respect to the character of the resolution there is the widest possible divergence. The plaintiff says that it is mandatory. The defendant takes the position that it clothed the President with the fullest discretion to require or not to require the payment of plaintiff's claim. An examination of the resolution discloses that no middle ground is possible, and that either the President was given no discretion, or that he was given complete and absolute discretion. To decide which of these antagonistic theories correctly interprets the in-

tention of Congress as expressed in the resolution, it is proper to consider what may be done by Congress itself in providing for the payment of moral or honorary claims against the Government; what, if anything, it may leave to tribunals or officers of the government; what, if anything cannot be delegated by it; and, passing from the abstract powers of Congress, what Congress in fact did in the matter of plaintiff's claim.

In considering these matters, it is necessary to premise that the recognition of moral or honorary claims against the government "depends solely upon Congress, and whether it will recognize claims thus founded must be left to the discretion of that body." United States v. Realty Co., 163 U. S. 427, 441, 16 Sup. Ct. 1120, 1126 (41 L. Ed. 215). In that case it is further said (p. 440, 16 Sup. Ct. 1126):

"To no other branch of the government than Congress could any application be successfully made on the part of the owners of such claims or debts for the payment thereof."

From this premise it would seem inevitably to follow, not only that the recognition of moral claims against the government is solely a congressional power, but also that in the exercise of that power Congress alone can determine what claims shall be recognized and paid. This it may do by providing for the payment of specific claims absolutely, or by providing for the payment of claims having specified attributes or coming within a defined class. The Congress may decide for itself all the facts with respect to the claims, or it may prescribe the principle or major premise by which all claims to be paid must be tested, and leave to a specified tribunal or officer the determination of what claims fall within that rule. Guthrie National Bank v. Guthrie, 173 U. S. 528, 537, 19 Sup. Ct. 513, 43 L. Ed. 796; United States v. Realty Co., 163 U. S. 427, 441, 443, 16 Sup. Ct. 1120, 41 L. Ed. 215; Town of Guilford v. Supervisors, etc., 13 N. Y. 143.

But if the Congress goes further, and confers upon an officer or tribunal, not only the power to determine some specified fact or state of things, the minor premise with respect to the particular claims, but also the power to make its own controlling rule, principle, or major premise with respect to their payment or nonpayment, it confers or attempts to confer upon such officer or tribunal a complete and absolute discretion. Such an act, however, would be a delegation of the full legislative power and discretion with respect to the payment of such claims, and hence invalid. Field v. Clark, 143 U. S. 649, 692, 694, 12 Sup. Ct. 495, 36 L. Ed. 294.

The defendant cites against this conclusion United States v. Ferreira, 13 How. 40, 14 L. Ed. 42; Vigo's Case, 21 Wall. 648, 22 L. Ed. 690; Roberts et al. v. United States, 92 U. S. 41, 23 L. Ed. 646; Boynton v. Blaine, 139 U. S. 306, 314, 320, 11 Sup. Ct. 607, 35 L. Ed. 183; La Abra Silver Mining Co. v. United States, 175 U. S. 423, 441, 460, 20 Sup. Ct. 168, 44 L. Ed. 223. But in each of those cases, as I understand them, the Congress either expressly or by necessary implication prescribed the principle by which the action of the tribunal should be guided. In no instance was there a grant of absolute discretion to pay or not to pay, and hence in no instance was there invalid delegation

of legislative power. It follows, as I see it, that the contention of the defendant that the President was vested with complete and absolute discretion to require or not to require the payment of plaintiff's claim would render the resolution invalid, and so that contention cannot in any event be sustained, if any other construction of the resolution is possible.

[5-7] Is another construction possible? The answer to this inquiry involves a decision upon the further question of what powers, among those that it might have exercised touching plaintiff's right to compensation, did Congress in fact exercise, and what powers pertaining thereto, if any, did it in fact delegate to the President. If Congress found, as it had the power to find, that plaintiff's claim rested upon a certain transaction entered into and carried on by the plaintiff at the request and under the direction of the Department of Justice, it determined the crucial fact, and the only fact, so far as the record discloses, upon which the moral right of plaintiff to compensation turns. Hence, if it in fact so found, Congress determined for itself plaintiff's right to compensation, left nothing for the President to decide, and consequently left no room for the exercise of his discretion.

As I read the resolution, Congress did expressly and affirmatively find that fact. Before Congress made that finding and adopted the resolution, the committees of the House and Senate, to which the resolution was respectively referred, took exhaustive evidence upon that very matter, and severally reported to their respective houses that "the purchase provided for in within resolution was duly authorized by the representatives of the President, who controls all of the stock of the United States Sugar Equalization Board (Incorporated), and that such board should, as a matter of justice and equity, assume and pay the loss sustained by P. De Ronde & Co. (Incorporated) in this transaction." Resort to these reports may be here had for the purpose of ascertaining the intention of Congress, as expressed in the language of the resolution. United States v. St. Paul, M. & M. Ry. Co., 247 U. S. 310, 38 Sup. Ct. 525, 62 L. Ed. 1130. Consequently it appears that not only is a construction of the resolution other than that suggested by the defendant possible, but that the duty of the President under the resolution was necessarily ministerial and mandatory.

The conclusion that the duty imposed upon the President was ministerial and mandatory need not be predicated solely upon the grounds hereinbefore considered. Obviously, the resolution had "its impulse in the belief that injury had been done to the plaintiff." The resolution "in controversy was the expression of that belief. Its purpose was relief shown to be due from a problem already solved, not to start another problem." Parish v. MacVeagh, 214 U. S. 124, 29 Sup. Ct. 556, 53 L. Ed. 936.

Moreover, it has been held with great uniformity that what a public officer is empowered by the Congress to do for others, and it is beneficial to them to have done, the law holds that he ought to do, and that in such instances the language used by the Legislature, though permissive in form, is in fact peremptory. Supervisors v. United States, 4 Wall. 435, 18 L. Ed. 419; Mason et al. v. Fearson, 9 How. 248, 13 L.

Ed. 125; United States v. Cornell Steamboat Co., 137 Fed. 455, 69 C. C. A. 603, affirmed 202 U. S. 184, 26 Sup. Ct. 648, 50 L. Ed. 987. In such statutes the word "authorized" has many times been held to mean "directed." In Chase v. United States (C. C. A.) 261 Fed. 833, 837, affirmed 256 U. S. 1, 41 Sup. Ct. 417, 65 L. Ed. 801, the court said:

" * * * An examination of the legislation of Congress shows that in many of the acts of Congress the word 'authorized' is frequently used where a duty is imposed upon a public executive officer, and in no case are the duties imposed discretionary, unless, after the word 'authorized,' the other words, 'in his discretion,' are added.. As was said by the Supreme Court of the United States in Mason et al. v. Fearson, 9 How. 258, 13 L. Ed. 125: 'Whenever it is provided that a corporation or officer "may" act in a certain way, or it "shall be lawful" for them to act in a certain way, it may be insisted on as a duty for them to act so, if the matter, as here, is devolved on a public officer, and relates to the public or third' persons. * * * Without going into more details, these cases fully sustain the doctrine, that what a public corporation or officer is empowered to do for others, and it is beneficial to them to have done, the law holds he ought to do. The power is conferred for their benefit, not his; and the intent of the Legislature, which is the test in these cases, seems under such circumstances to have been "to impose a positive and absolute duty." ' Mayor of New York v. Furze, 3 Hill (N. Y.) 612; Minor et al. v. Mechanics' Bank of Alexandria, 1 Pet. 46, 64, 7 L. Ed. 47, and note; Livingston v. Tanner, 14 N. Y. 64; Ralston v. Crittenden (C. C.) 13 Fed. 508; Supervisors of Rock Island County v. U. S., 4 Wall. 435, 18 L. Ed. 419."

I am of the opinion that the word "authorized," as used in the resolution in question, is mandatory, means "directed," and that the resolution conferred no discretionary power whatever upon the President of the United States. In connection with this conclusion it should be observed that the duty imposed upon the President by the resolution was not an attempt to control his exercise of the powers conferred upon him by the Constitution, which is beyond the reach of Congress, but touched only the matter of the exercise of powers conferred upon him by Congress. The resolution was a direction to him merely as the medium, means, or instrumentality through which the United States, while recognizing the corporate nature of the defendant, its subsidiary corporation, yet enforced its will upon it. The concluding lines of the resolution are in effect but a power of attorney or proxy empowering the President to vote the stock of that corporation in a specified manner to bring about the declared purpose and intention of Congress.

[8, 9] The resolution being mandatory, but its mandate not having been carried out, with what equitable rights, if any, is the plaintiff vested by virtue of the resolution? The extent to which the defendant or its assets were affected by the resolution depends in part upon the relation existing between the United States and the defendant. That relation was a dual one. The defendant was a subsidiary corporation of the United States, and it was also a potential debtor of the United States. The facts out of which the former relationship arose have already been stated. The latter grew out of the facts that in December, 1919, the purposes for which the defendant had been organized were completed and its active business was then at an end; that out of that activity it had made a profit of approximately $39,000,000; that at the time of the passage of the resolution the defendant was liquidating and

winding up its affairs, and that it then had in its possession money or assets representing both the full par value of its capital stock and that portion of the profits, amounting to several million dollars, which had not been paid to the United States, its stockholder. To these moneys, either item of which was greatly in excess of plaintiff's claim, the United States would be absolutely entitled upon the consummation of the act then being done by the corporation, namely, liquidating and winding up. Such a fund is subject to equitable assignment. Pom. Eq. Jur. § 1283.

I am of the opinion that the adoption of the resolution was in legal effect an equitable assignment of that fund to such an extent and in such sum as might be found by the defendant to represent the actual loss sustained by the plaintiff in the transaction which gave rise to the resolution. It is not essential to the existence of an equitable assignment of a fund that the debtor, agent, or depositary should be *expressly* directed to pay over the money to the assignee. Pom. Eq. Jur. § 1282. Yet in the case at bar, the President being without discretion, there was an express order to the defendant to pay. It is true that the order, though express, was not given to the defendant directly; but it is likewise true that it was as direct as the corporate character of the defendant and the embodiment of a provision in the resolution for its enforcement, without judicial aid, permitted. The Congress, having commanded another to require the defendant to find and pay the amount of plaintiff's loss, must be held to have intended and done that which it commanded to be done.

[10] It is probably likewise true, as defendant contends, that there is no privity between the parties to this suit. While privity between the parties might be essential to the maintenance of an action of contract at common law, the doctrine of equity is very different. "Equity recognizes an interest in the fund, in the nature of an equitable property, obtained through the assignment, or the order which operates as an assignment, and permits such interest to be enforced by an action, even though the debtor or depositary has not assented to the transfer." Pom. Eq. Jur. § 1280. I think it unnecessary here to point out wherein the remaining essentials of an equitable assignment are to be found in the facts, as that seems patent. It may be that the plaintiff is likewise entitled to relief against the defendant or its property, on the theory of U. S. Grain Corp. v. Phillips, 261 U. S. 106, 43 Sup. Ct. 283, 67 L. Ed. 552; but, in view of the conclusion that the resolution was a present appropriation of a fund and a valid equitable assignment, I think that case need not here be gone into. Having an interest in the property of the defendant, the plaintiff is entitled to injunctive relief to prevent the threatened payment by the defendant of the fund into the treasury of the United States, where it would probably be beyond the reach of the plaintiff. Osborn v. United States Bank, 9 Wheat. 739, 844, 6 L. Ed. 204.

Moreover, the plaintiff is, in my opinion, entitled to have the amount of his actual loss in the transaction ascertained and paid, and for that purpose I think a mandatory injunction might now be issued. But, in view of the fact that the intention of Congress will, without question,

be fully, completely, and expeditiously carried out, by those upon whom Congress placed the duty so to do, as soon as the joint resolution shall have received a final judicial interpretation, a mandatory injunction will not now be granted.

A preventive preliminary injunction, as prayed for, will be granted.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes