ANNA M. MASON, WIDOW, AND JOHN MASON, JAMES M. MASON, EILBRECK MASON, MURRAY MASON, MAYNADIER MASON, BARLOW MASON, SAMUEL COOPER AND SARAH M., HIS WIFE, SIDNEY S. LEE AND ———, HIS WIFE, CECILIUS C. JAMESON AND CATHERINE, HIS WIFE, HEIRS AND DEVISEES OF JOHN MASON, DECEASED, PLAINTIFFS IN ERROR, v. JOSEPH N. FEARSON.

Under the earlier charters of the city of Washington, this court decided (8 Wheaton, 687), that, where an individual owned several lots which were put up for sale for taxes, the corporation had no right to sell more than one, provided that one sold for enough to pay the taxes on all.

In 1824, Congress passed an act, providing, "That it shall be lawful for the said corporation, when there shall be a number of lots assessed to the same person or persons, to sell one or more of such lots for the taxes and expenses due on the whole; and also to provide for the sale of any part of a lot for the taxes and expenses due on said lot, or other lots assessed to the same person, as may appear expedient, according to such rules and regulations as the corporation may prescribe."

Mason et al. *v.* Fearson.

This is not in conflict with the previous decision of this court. The discretion given to the corporation is not unlimited to sell each lot for its own taxes. On the contrary, the words "it shall be lawful" and "may" sell one lot, impose an obligation to stop selling if that one lot produces enough to pay the taxes on all.

What a public corporation or officer is empowered to do for others, and it is beneficial to them to have done, the law holds he ought to do.

THIS was an action of ejectment brought by John Mason, in his lifetime, to recover possession of some lots in the city of Washington held under a tax title.

The case was brought up, by writ of error, from the Circuit Court of the United States for the County of Washington and District of Columbia.

In the trial of the cause in the Circuit Court, the following statement of facts was agreed upon, subject to the opinion of the court upon it.

## *Statement.*

" The plaintiff, to support the issue on his part, made out a title in one Benjamin Stoddert, in all the lots in the declaration mentioned, except lot No. 8, in square No. 44, under the Commissioners of the City of Washington, or the Superintendent of the Public Buildings in said city, and proved that lot No. 8, in square No. 44, was allotted to Robert Morris and John Nicholson, original proprietors of the ground on which the said square was laid out, in the distribution of the lots in said square between the public and the proprietors, and then made out a title in the said Benjamin Stoddert, under the said Morris and Nicholson, to the said lot No. 8, in square No. 44. It was thereupon agreed that Benjamin Stoddert was, prior to the 18th day of April, in the year 1805, seized in fee of all the lots in the said declaration mentioned. The plaintiff, further to support the issue on his part, offered to read, and read in evidence to the jury, a deed of conveyance of each of the said lots from the said Benjamin Stoddert, bearing date the 18th day of April, in the year 1805, to David Peter and James S. Morsell, and to the survivor of them, and the heirs of such survivor, in the words and figures following, to wit (copied in p. 20); also the printed articles of association mentioned and referred to in the said deed (copied in p. 49). The plaintiff also offered to read, and read in evidence to the jury, the bill of complaint, answers, and decree, in a certain cause on the chancery side of the said Circuit Court for the county aforesaid, in which Henry Alexander and Mary Air were complainants, and James S. Morsell, and Joseph Forrest, and others, were defendants; also the report of the proceedings of James S. Morsell, the trustee appointed by the decree of said court, in the said cause, and of the

sales made by him in virtue of such decree, and the orders of the said court ratifying the said sales, and a deed from the said trustee to the plaintiff's lessor, the said John Mason, for the said lots in the said declaration mentioned, bearing date the 13th day of November, in the year 1844 (copied in pp. 32 to. 57). The plaintiff also read in evidence to the jury two receipts signed W. W. Billing, collector, marked B and C, one for taxes for the years 1826 and 1827, the other for taxes for the year 1832, on sundry lots therein mentioned, assessed to the Washington Tontine Company (copied in pp. 61, 62). The plaintiff there rested.

" Whereupon the defendant, to support the issue on his part, produced, and read in evidence to the jury, the official assessment-books of the corporation of the city of Washington, for the years 1836 and 1837, and proved that the lots in the said declaration mentioned, with divers other lots in the said city, amounting to twenty in number, were assessed for the said years to the Washington Tontine Company ; 'that the said lots, and many others in the said city, had been so assessed in the books of the said corporation to the Washington Tontine Company,' from the years 1808 down to 1840 inclusive. The defendants also produced and read in evidence the tax-books, of the said corporation for the years 1836 and 1837, and proved thereby that the lots in the said declaration mentioned, and sundry other lots assessed to the Washington Tontine Company, appeared arranged in columns in the established and accustomed forms, exhibiting the manner in which said lots were assessed for those years, the numbers of the lots and squares, the rate of assessment, valuation of the lots severally, the valuation of the improvements, and the amount of tax on each lot ; that the lots so assessed to the Washington Tontine Company were entered in the said tax-books for the years 1836 and 1837, in the following manner (copied in pp. 63     .)

" The defendant further proved, that the tax on the said lots, so assessed to the Washington Tontine Company, for the year 1836, fell due and was payable on the 1st day of January, in the year 1837, and the tax on the same lot for the year 1837 fell due and was payable on the 1st day of January, 1838 ; and that on the 1st day of January, in the year 1838, there were two years' taxes due and in arrear on the said lots in the said declaration mentioned, and on the others so assessed to the said Washington Tontine Company. It is further proved, on the part of the defendant, that the collector of taxes imposed by the said corporation, and who was authorized to advertise and sell the property liable to be sold in the said city for taxes, on

Mason et al. *v.* Fearson.

the 15th day of September, in the year 1838, the taxes on the said lots for the year 1836 and 1837 being in arrear and unpaid, caused to be inserted in the National Intelligencer, a newspaper published in the said city, the following advertisement (copied in p. 64); and that the said advertisement appeared in the said newspaper once in each week for twelve successive weeks before the day appointed therein for the sale of the said lots; that the said advertisement was erroneous, in that it stated that three years' taxes were in arrear and unpaid on the said lots, the fact being that the tax on the said lots for the year 1835 had been paid to the corporation before the said advertisement appeared; that such error was detected before the sale, and the lots were in fact sold for the taxes due and in arrear for the years 1836 and 1837; that in pursuance of his authority, and according to the tenor of the said advertisement, the said collector, on the 8th day of December, in the year 1838, set up at public sale, in the Aldermen's room, in the City Hall, in said city, in the presence of about sixty persons, the said lots so advertised and assessed to the Washington Tontine Company; and the said lots, being all the lots so assessed to said Washington Tontine Company, were severally sold, each for its own tax, and the said sales were reported, and entered on the official sales book of the said corporation, in manner and form following, (copied in p. 65,) which shows the number of the lots and squares, to whom the same were assessed, the names of the purchasers, the amount of tax due on each lot, the expenses of sale, and the amount for which each lot sold; it was also proved by the said collector, and is admitted, that the said lots were sold in the order in which they appear set down in the said advertisement and report of sales.

"It was further proved by the defendant, that the said defendant paid the taxes and expenses on each lot purchased by him at said sale; and that on the 19th day of May, in the year 1841, the said defendant paid the residue of the purchase-money for the said lots bought by him, with interest thereon, at the rate of 10 per cent. from the 8th day of December, in the year 1840, to the said 19th day of May, 1841, and no more, and received a deed for the said lots from the mayor of the said city of. Washington on the 1st day of 'June, in the same year, duly executed and acknowledged, and afterwards recorded, which was given in evidence to the jury, and in the words and figures following, to wit (copied in p. 66). It was further admitted, that the said John Mason, the plaintiff lessor, was one of the original subscribers and members of the said Washington Tontine Company, from the commencement of its

organization to its dissolution, and received his share of the assets thereof; and that certificates of stock in said company were issued by said company to the original shareholders, in the words and figures following, to wit (copied in p. 70). And that the said John Mason, the plaintiff lessor, held such certificate for the shares of stock in the said company owned by him.

" Whereupon, the said facts having been so proved and agreed, and reduced to writing, it was agreed by the counsel for the plaintiff and the defendant, that a verdict should be entered for the defendant, subject to the opinion of the court on the facts and evidence so proved, agreed, and stated, as well on the part of the plaintiff as of the defendant; and that if the court should be of opinion, from the facts and evidence so proved, agreed, and stated, on both sides, that the sale of the lots mentioned in the declaration so made as aforesaid, by the authority of the corporation of Washington city, was a legal and valid sale, and that the defendant thereby acquired a legal title to the said lots, the said verdict should be entered for the defendant; but if the court should be of opinion that the said sale was not a legal and valid sale, and that the legal title to the said lots did not thereby pass to the defendant, that the verdict shall be entered, and judgment thereon be recorded for the plaintiff. Either party to have a right of appeal to the Supreme Court of the United States upon the above statement of facts and evidence, so proved and agreed, and the judgment of the court thereon.

> "JOHN MARBURY, *Plaintiff's Attorney.*
> W. REDIN, *Defendant's Attorney.*"

The assessed value of the lots and report of sales, referred to in the above statement, were as follows: —

*Assessed Value of the Lots.*

| Owner's Name and Residence. | No. of Square. | No. of Lot. | Value of Lot. | Owner's Name and Residence. | No of Square. | No. of Lot. | Value of Lot. |
|---|---|---|---|---|---|---|---|
| Washington Tontine Co. | 5 | 4 | $82 | Washington Tontine Co | 31 | 2 | 198 |
| "      " | — | 24 | 296 | "      " | — | 10 | 96 |
| "      " | — | 26 | 109 | "      " | — | 14 | 128 |
| "      " | 6 | 7 | 163 | "      " | — | 15 | 101 |
| "      " | — | 8 | 90 | "      " | 37 | 6 | 90 |
| "      " | 17 | 13 | 96 | "      " | 42 | 1 | 137 |
| "      " | — | 14 | 81 | "      " | 44 | 8 | 109 |
| "      " | 28 | 5 | 111 | "      " | 55 | 1 | 123 |
| "      " | — | 6 | 83 | "      " | — | 2 | 169 |
| "      " | — | 28 | 311 | "      " | — | 15 | 230 |

Mason et al. *v.* Fearson.

*Extract from the Report made by the Collector to the Register, of Lots sold for Taxes, on the 8th day of December, 1838.*

| No. of Square. | No. of Lot. | To whom assessed. | Amount of Tax on each Lot. | Expense on each Lot. | To whom sold. | Amount sold for. | Amount received. |
|---|---|---|---|---|---|---|---|
| 5 | 4 | Washington Tontine Co. | $1.22 | $0.94 | Anthony Preston | $35 | $2.16 |
| — | 24 | " " | 4.44 | 1.06 | " | 50 | 5.50 |
| — | 26 | " " | 1.64 | 0.95 | T. W. Pairo | 35 | 2.59 |
| 6 | 7 | " " | 2.46 | 0.99 | Wm. Easby | 40 | 3.45 |
| — | 8 | " " | 1.34 | 1.14 | " | 30 | 2.48 |
| 17 | 13 | " " | 1.44 | 0.95 | Anthony Preston | 66 | 2.39 |
| — | 14 | " " | 1.22 | 0.94 | G. C. Grammer | 35 | 2.16 |
| 28 | 5 | " " | 1.68 | 0.95 | J. N. Fearson | 52 | 2.63 |
| — | 6 | " " | 1.24 | 0.93 | " | 40 | 2.17 |
| — | 28 | " " | 4.68 | 1.07 | " | 45 | 5.75 |
| 31 | 2 | " " | 2.96 | 1.01 | " | 40 | 3.97 |
| — | 10 | " " | 1.44 | 0.95 | " | 10 | 2.39 |
| — | 14 | " " | 1.92 | 0.97 | " | 25 | 2.89 |
| — | 15 | " " | 1.52 | 0.95 | " | 31 | 2.47 |
| 37 | 6 | " " | 1.34 | 1.14 | " | 10 | 2.48 |
| 42 | 1 | " " | 2.04 | 0.97 | " | 41 | 3.01 |
| 44 | 8 | " " | 1.64 | 0.95 | " | 20 | 2.59 |
| 55 | 1 | " " | 1.84 | 0.97 | G. C. Grammer | 31 | 2.81 |
| — | 2 | " " | 2.56 | 0.99 | J. N. Fearson | 22 | 3.55 |
| — | 15 | " " | 3.46 | 1.03 | A. Preston. | 47 | 4.49 |

Upon the agreed state of facts, the Circuit Court gave judgment for the defendant. The plaintiff brought the case to this court, by writ of error, and the present plaintiffs in error were his heirs and devisees.

It was argued by *Mr. James M. Mason*, for the plaintiffs in error, and *Mr. Bradley*, for the defendant in error.

On the part of the plaintiffs in error, three points were raised, of which it is necessary to notice only one.

2. That, pursuant to the charter of their authority, it was the duty of the corporate authorities of this city, in selling for taxes in arrears the several lots in the proceedings mentioned, all of which, though belonging to the appellant, were assessed to the Washington Tontine Company, to sell only "so much thereof as might be necessary" to pay the taxes due, with all legal costs and charges arising thereon; that is to say, to sell "one or more of said lots," so assessed, as might be found necessary to discharge the same.

Whereas, as appears by the case stated, these lots were "severally sold each for its own tax," without regard to the fact that the first two lots sold did sell for more than sufficient to

pay all taxes and charges due on the whole number advertised, as assessed to the Washington Tontine Company. Upon this point we refer to the act aforesaid of 1820, § 10; Act of 1824, § 4; Act of 1848, § 7; Corporation of Washington *v.* Pratt, 8 Wheaton, 681; Ronkendorf *v.* Taylor's Lessee, 4 Peters, 349; Stead's Executors *v.* Course, 4 Cranch, 403; Williams et al. *v.* Peyton's Lessee, 4 Wheaton, 77; S. C., 4 Cond. Rep. 349; Thatcher et al. *v.* Powell, 6 Wheaton, 119.

*Mr. Bradley*, for the appellant, maintained the following propositions: —

First. The power of taxation, and the mode in which it is to be exercised, are given alone by the act of May, 1820.

And in point of fact all the requirements of that act in that particular have been complied with, and the books of the corporation are evidence of these acts.

Second. The means of enforcing this power, as against the lot itself, are given in the second section of the act of 1824.

And in point of fact all the acts necessary under that section to be done have been fully performed by them in this case, unless they are restricted by the fourth section of the same act.

Third. That the fourth section of the act of 1824 is not mandatory; and it is left to the discretion of the corporate authorities whether they will or will not provide for the sale of any one or more lots, or part or parts of lots, to satisfy the taxes due on the whole, assessed to the same person.

No objection having been taken below, and none appearing on the record as to the first two propositions, the argument will be principally directed to the third, on which, indeed, the case turns. If it shall be established, this case will operate to confirm the titles to a vast amount of property in this city which has been sold for taxes since 1824; and if a different construction is given to it, those titles will, to that extent, be disturbed.

1st. If we collect from the original act and this supplement alone, or from the case of the Corporation of Washington *v.* Pratt, Francis, and others, the defects which existed in the charter, and which were designed to be remedied by this supplement, we will find it must be construed as discretionary and not mandatory. The following rules of interpretation are given by the Barons of the Exchequer in Heydon's case, 3 Report, 7: — Inquire

1. What was the common law before making the act.

2. What was the mischief and defect against which the common law did not provide.

3. What remedy Parliament hath resolved and appointed to cure the disease of the commonwealth, &c.

4. The true reason of the remedy.

And it was held to be the duty of the judges, at all times, to make such construction as would suppress the mischief and advance the remedy, putting down all subtile inventions for the continuance of the mischief, *et pro privato commodo;* and adding force and life to the cure and remedy, according to the true intent of the makers *et pro bono publico.*

And Dwarris, p. 697, says, — "The cause and reason of the act (or, in other words, the mischief requiring the remedy) may either be collected from the statute itself, or discovered from circumstances extrinsic of the act. . . . . . The remedy is to be gathered from the act itself."

2d. If we take the whole act, and compare its different provisions to reconcile them, this section must be construed as granting a power to be exercised at the discretion of the corporation.   Howell *v.* Lord Zouch, Plowd. 365 ; Doe ex d. Bywater *v.* Brandling, 7 Barn. & Cress. 643; Co. Lit. 381, *a*; Opinion of Coleridge, J., in Rex *v.* Poor Law Com., 6 Ad. & El. 7; Broom's Leg. Max. 253, 254; 1 Kent's Com. 462; Pennington *v.* Cox, 2 Cranch, 33; U. States *v.* Fisher, Ibid. 358.

3d. If the words are not precise and clear, and such construction is given as will alone secure it from an absurd consequence, it must be taken as permissive, not mandatory. Commonwealth *v.* Kimball, 24 Pick. 37; United States *v.* Fisher, 2 Cranch, 358.

4th. In order that one clause shall not frustrate and destroy the others, but explain and support them, this section must be construed as permissive.   Best, J., 4 Bingh. 196; Dwarris, 703, 704.

5th. The words of the act are plain and unambiguous.   It is "to be read without breaks or stops"; there are qualifying words at the end of the section; they must operate on all the precedent grants in the section.   2 Inst. 50; Dwarris, 704; 1 Stev. Elec. L. 21.

6th. It may be generally true, that, where a public body or officer has been clothed by statute with power to do an act which concerns the public interest, or the right of third persons, the execution of the power may be insisted on as a duty, though the phraseology of the statute be permissive merely, and not peremptory.   City of New York *v.* Furze, 3 Hill, 612. Yet if the exercise of that power is clearly intended by the legislature to be discretionary in the public body or officer to whom it is intrusted, the rule cannot apply.   For no general

rule can be laid down upon this subject, further than that that exposition ought to be adopted in this, as in other cases, which carries into effect the true intent and object of the legislature in the enactments. Story, J., in Minor et al. *v.* The Mechanics' Bank of Alexandria, 1 Pet. 64.

In this case the intention is clear from "the cause, the reason, and remedy," from "the whole act itself," from "a comparison of the different sections and provisions," from "the very words of the act," and because "any other construction would involve absurd consequences," and that intention was, not to give a power which the corporation *must*, but which it *might*, exercise.

Mr. Justice WOODBURY delivered the opinion of the court.

Several reasons have been assigned for the reversal of the judgment in this case; but as we think one of them is well founded, it is not necessary to examine the others. That one is the sale of each of the twenty lots, assessed to the Washington Tontine Company, instead of selling the first two lots only, they having been bid off for more than enough to pay the taxes on the whole. The sale of all of them was, therefore, unnecessary to insure the collection of all the taxes; and as they brought but little beyond one fourth of their appraised value, the sale of all was not only unnecessary, but a great sacrifice of property.

It is admitted by the city, which defends this action, that the law authorized the sale of so many lots assessed to the same proprietor as would be sufficient to pay the taxes on all, and there to stop. But at the same time, it is contended that the law allowed a discretion to the city to sell each lot for the tax on each, and that in the exercise of this discretion the sale of all can be vindicated as legal.

We think otherwise. After careful examination, we are satisfied that no such discretion was meant to be conferred, under the circumstances of the present case. Though the ancestor of the plaintiffs in error became entitled to eleven of the twenty lots sold as early as 1827, and paid the taxes on them for two or three years, yet he never caused his name to be entered in the city books as proprietor of them, nor obtained any deed of them executed and recorded, so that the city might see the change of title to him on the records, and tax them to him, till November 13th, 1844. Hence, in 1836 – 37, when the taxes now in controversy were assessed, the city rightfully taxed all these lots to the Tontine Company, and could sell any of them to pay the taxes imposed on all, against that company.

The ancestor of the plaintiffs could not complain of that course, under his own neglect to perfect his title, so as to have his name, rather than the name of the company, entered on the tax-list as owner of eleven of the lots.    Much less does it comport with reason that the city should on this ground object to its own power to sell any of those lots to pay the taxes assessed on all, when its officers had claimed them all to belong to the company, and had assessed and sold them all as the property of the company.

But, independent of this, a discretion to sell all is claimed under the act of Congress of 1824.   In order to judge correctly whether there is a good foundation for this discretion, it will be necessary to examine briefly the history of the legal provisions on this point, and the provisions themselves.

Under the city charter, as amended May 4th, 1812 (2 Statutes at Large, p. 721, § 8), " unimproved lots," " or so much thereof as may be necessary to pay such taxes, may be sold," for their payment.

On the 15th of May, 1820, a new charter was given to the city, which provided that "real property, whether improved or unimproved," " or so much thereof, not less than a lot, (when the property upon which the tax has accrued is not less than that quantity,) as may be necessary to pay any such taxes," " may be sold," &c.   3 Statutes at Large, p. 589, § 10.

In 1823, a decision was made by this court, in the case of the Corporation of Washington *v.* Pratt, 8 Wheaton, 687, settling the construction of the laws as existing in 1812 on several points in relation to the assessment and sale of lots for taxes; and, among other things, holding on this particular point as follows : — " But if taxes be due by one and the same individual in small sums upon many lots, and one lot, being set up for sale, produces a sum adequate to the payment of all, the whole arrears become paid off, and no excuse can then exist for making further sales."   The act of May 26th, 1824, was then passed, which in some respects provided anew concerning a part of the points settled in 1823, where the act or charter of 1820 was similar to that of 1812.

But on the point now under consideration it made a special provision in these words : — " And be it further enacted, that it shall be lawful for the said corporation, where there shall be a number of lots assessed to the same person or persons, to sell one or more of such lots for the taxes and expenses due on the whole ; and also to provide for the sale of any part of a lot for the taxes and expenses due on said lot, or other lots assessed to the same person, as may appear expedient, according to such

rules and regulations as the said corporation may prescribe." (See Act of May 26th, 1824, § 4.)

The city contends, that this changed the construction given to the law of 1812 by this court in 1823, or rather changed the law of 1820, which was the same in substance as that of 1812, and conferred a discretion to sell each lot for its own tax, or only so many of several assessed to the same person as might be necessary to pay all the taxes due from him.

But it will be seen that the language used in the last act, of 1824, was substantially the same on this subject as that in 1812 and 1820. The words used in the former acts, as to a sale of all or a portion of the lots for the taxes on all, had been recently adjudged by this court to require absolutely that the latter course be pursued when a part sold for enough. And Congress, so far from appearing to wish an alteration of the law in this particular, as just construed, seem to sanction it by declaring explicitly, as before, the existence of the power to sell a part of the lots, and which power this court had, under all the circumstances, decided was imperative on the city. The chief difference in this respect between the acts of 1812, 1820, and 1824 was, that, in the last, Congress used more clear and positive terms than before, when authorizing the sale of a part of the lots for all the taxes, and added a material change, authorizing them to sell, when "appearing expedient," even a part of one lot. Evidently, by the sense and the locality in the sentence of the expression "as may appear expedient," they confined any new discretion or expediency thus conferred to the new provision for the sale of a part of a lot.

Was there any reason existing why we should infer that Congress meant to make any other change than this last in respect to such sales?

The former provisions for selling only one or more lots, when enough to pay the taxes on all belonging to the same owner had existed so long, had been so positively adjudged by this court to be imperative, and were so obviously just and necessary to prevent sacrifices and speculation, that Congress in 1824 might well entertain no disposition to alter them, but rather to adopt and confirm the construction given by this court in the previous year.

With the knowledge of our construction, like words being again repeated by Congress, it may well be considered that a like construction was intended, and was expected to be given to those words. The only plausible argument which remains to be considered against the design to make this power to sell only enough to pay all the taxes mandatory, as it had before

been construed by this court, rests on the supposed incorrectness of the general rule of construction, as applied to the facts here, which holds the expression " may " sell, or " it is lawful " to sell, in a particular way, to be imperative.   But if we look to the true test of the principle involved in the question, no great doubt can remain.   This general rule may seldom be correct, in a popular sense, as to such words when used in contracts and private affairs.   But under the circumstances existing here, it is founded on sound principles and numerous precedents.

The form of expression adopted here, it must be remembered, is employed in laws, and not contracts, and of course, if a well established construction had been before given to it in laws by the courts under certain circumstances, it must be presumed to have been well known, and intended here under like circumstances.   What are these circumstances?   Whenever it is provided that a corporation or officer " may " act in a certain way, or it " shall be lawful " for them to act in a certain way, it may be insisted on as a duty for them to act so, if the matter, as here, is devolved on a public officer, and relates to the public or third persons.

Thus, in Rex & Regina *v.* Barlow, 2 Salkeld, 609, — " Where a statute directs the doing of a thing for the sake of justice or the public good, the word ' may ' is the same as the word ' shall '; thus, 23 Hen. 6 says the sheriff *may* take bail; this is construed he *shall*, for he is compellable so to do."   Carthew, 293.

On this, see further The King *v.* The Inhabitants of Derby, Skinner, 370; Backwell's case, 1 Vernon, 152 – 154; 2 Chitty, 251; Dwarris on Stat. 712; Newburgh T. Co. *v.* Miller, 5 Johns. Ch. 113; City of New York *v.* Furze, 3 Hill, 612, 614; Minor et al. *v.* The Mechanics' Bank, 1 Peters, 64. Without going into more details, these cases fully sustain the doctrine, that what a public corporation or officer is empowered to do for others, and it is beneficial to them to have done, the law holds he ought to do.   The power is conferred for their benefit, not his; and the intent of the legislature, which is the test in these cases, seems under such circumstances to have been " to impose a positive and absolute duty."   But, under other circumstances, where the act to be done affects no third persons, and is not clearly beneficial to them or the public, the words " may " do an act, or it is " lawful " to do it, do not mean " must," but rather indicate an intent in the legislature to confer a discretionary power.   Malcom *v.* Rogers, 5 Cowen, 88; 1 Peters, 64; 5 Johns. Ch. 113.

So, in private contracts or trusts, such language may confer a discretion. 5 Johns. Ch. 113. But in the case of a law and of public officers, and as to acts affecting third persons, as here, that the authority thus conferred must be construed to be peremptory is not only manifest from the above precedents and their analogies, but has been virtually settled by this court in the 8th of Wheaton, before cited, on the act of 1812, which, we have already seen, used language the same in substance as that of 1824 on this particular point.

The argument that the owner of these lots need not have suffered by all of them being sold, and at a low price, because he might have redeemed them, has little force when the same oversight, or accident, or misfortune, which prevented the seasonable payment of the tax, is likely to prevent the redemption, and when this argument, if sound, would apply to any other defect in the sale, and operate against the force of it, on the ground that the owner might redeem.

But instead of such loose constructive leniency towards a purchaser under a special law, it is well settled that where a tax title is to be made out by a party under such a law, as by the defendant in this case, it must be done in all material particulars fully and clearly. Stead's Executors *v.* Course, 4 Cranch, 403; Waldron *v.* Tuttle, 3 N. Hamp. 340. In the language of some of the cases, it must be done " strictly," " exactly," " with great strictness." 6 Wheaton, 127; 8 Wheaton, 683; 4 Peters, 359.

The purchaser, setting up a new title in hostility to the former owner, is not to be favored, and should have looked into it with care before buying, and not expect to disturb or defeat old rights of freehold without showing a rigid compliance with all the material requisitions of the laws under which the sale was made. Finally, it tends to fortify the view here adopted, that the statutes in several States on the subject of such sales allow only so many lots to be sold as will pay all the taxes against the same owner, such course being manifestly the most just. 4 Cranch, 403; 4 Wheaton, 81, note.

Judgment below reversed.

## *Order.*

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Columbia, holden in and for the County of Washington, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby,

reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Circuit Court, with directions to award a *venire facias de novo*.