CHASE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 21, 1919.)

No. 5283.

1. INDIANS ☞13—REPEAL OF STATUTE MAKING ALLOTMENT TO OMAHA INDIANS.
   The provision of Act Aug. 7, 1882, c. 434, § 8, for making allotments to children of the Omaha Tribe of Indians born thereafter from the unallotted lands thereby required to be patented in trust to the tribe, *held* repealed by Act May 11, 1912, c. 121, § 1, providing for the sale of such lands, with certain reservations, and the division of the proceeds among the children of the tribe.

2. STATUTES ☞227—OFFICERS "AUTHORIZED" BY LAW TO ACT MAY BE COMPELLED TO PERFORM THEIR DUTY.
   A statute which "authorizes" a public officer to do a certain thing imposes upon him a positive and absolute duty to do such act, which may be enforced by those for whose benefit it is to be done, in the absence of words giving him a discretion.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Authorize.]

3. INDIANS ☞13—STATUTORY RIGHT TO ALLOTMENT GIVES NO VESTED INTEREST.
   An Indian, given by statute the general right to an allotment from lands of the tribe, acquires no vested interest until the allotment is definitely selected, located, and set apart, and until such time Congress has plenary power to change the mode of disposition of the land.

4. APPEAL AND ERROR ☞1195(3)—ONLY QUESTION BEFORE APPELLATE COURT IS LAW OF THE CASE ON REVERSAL.
   Only those issues of law which were before the appellate court and by it determined become the law of the case, when upon reversal the cause is retried, and the question of the effect of a statute which was not in issue nor considered is open for consideration upon the second hearing.

5. APPEAL AND ERROR ☞1097(2)—ERRONEOUS PRIOR DECISION MAY BE SET ASIDE ON SECOND APPEAL.
   An appellate court by its decision does not preclude itself from doing justice between the parties, if on a subsequent appeal it should be convinced that its former decision was erroneous.

6. APPEAL AND ERROR ☞1096(3)—PARTY NOT ESTOPPED TO RAISE QUESTION OF LAW ON SECOND APPEAL.
   A party is not estopped from raising a question of law on a second appeal, because it might have been, but was not, raised on the former appeal.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
   261 F.—53

Appeal from the District Court of the United States for the District of Nebraska; J. W. Woodrough, Judge.

Suit by Hiram Chase, Jr., a minor, by his next friend, Hiram Chase, against the United States. Decree for the United States, and complainant appeals. Affirmed.

For former opinion, see 238 Fed. 887, 152 C. C. A. 21.

John Lee Webster, of Omaha, Neb. (Hiram Chase, of Pender, Neb., on the brief), for appellant.

T. S. Allen, U. S. Atty., of Lincoln, Neb., and O. C. Anderson, Attorney for Omaha Tribe of Indians, of West Point, Neb. (Frank A. Peterson, Asst. U. S. Atty., of Omaha, Neb., on the brief), for the United States.

Before CARLAND and STONE, Circuit Judges, and ELLIOTT, District Judge.

CARLAND, Circuit Judge.  May 19, 1910, this action was instituted under the provisions of the act of Congress approved February 6, 1901 (31 Stat. 760, c. 217), by Hiram Chase, Jr., a member of the Omaha Tribe of Indians, by his next friend, Hiram Chase, Sr., to secure a decree for an allotment of land in the Omaha reservation, which had been denied to him by the Secretary of the Interior. The case was before this court at a former term, and, as stated in the opinion of the court, on appeal from a decree dismissing the amended complaint for the reason that it did not state facts sufficient to constitute a cause of action. We then decided that the amended complaint did state a cause of action under the act of Congress of August 7, 1882 (22 Stat. 341, c. 434). 238 Fed. 887, 152 C. C. A. 21. When the case went back to the trial court, the appellee answered, alleging among other things the acts of Congress of March 3, 1893 (27 Stat. 630, c. 209), and May 11, 1912 (37 Stat. 111, c. 121), as repealing the act of 1882, so far as the right of Chase, Jr., to an allotment was concerned. After a trial on the merits, a decree of dismissal of the action was entered, and appellant appealed.

[1] As our former decision gave Chase, Jr., no right to an allotment under the act of March 3, 1893, but expressly decided that he was not entitled to an allotment under said act, and that it did not repeal the act of 1882, it need not be mentioned, except perhaps in a historical way. We also decided that Hiram Chase, Jr., was entitled to an allotment of 40 acres under the act of 1882, supra. The question, therefore, before us is as to whether the act of May 11, 1912, supra, took away the right of Chase, Jr., to an allotment under the act of 1882. The act of 1882 provided for the sale of that portion of the Omaha reservation lying west of the Sioux City & Nebraska Railway and the allotment in severalty to the Indians of that portion of the reservation lying east of said railway in quantity as follows: To each head of a family one quarter of a section; to each single person over 18 years of age one-eighth of a section; to each orphan child under 18 years of age one-eighth of a section; and to each other person under 18 years of age one-sixteenth of a section. The act further

provided that the Secretary of the Interior should cause patents to be issued for said allotments in the names of the allottees, which patents should be of the legal effect and declare that the United States held the land thus allotted for the period of 25 years in trust for the sole use and benefit of the Indians to whom such allotments had been made. These allotments were made in 1884. Section 8 of the act of 1882 reads as follows:

"That the residue of lands lying east of the said right of way of the Sioux City & Nebraska Railroad, after all allotments have been made, as in the fifth section of this act provided, shall be patented to the said Omaha Tribe of Indians, which patent shall be of the legal effect and declare that the United States does and will hold the land thus patented for the period of twenty-five years in trust for the sole use and benefit of the said Omaha Tribe of Indians, and that at the expiration of said period the United States will convey the same by patent to said Omaha Tribe of Indians, in fee discharged of said trust and free of all * * * incumbrance whatsoever: Provided, that from the residue of lands thus patented to the tribe in common, allotments shall be made and patented to each Omaha child who may be born prior to the expiration of the time during which it is provided that said lands shall be held in trust by the United States, in quantity and upon the same conditions, restrictions, and limitations as are provided in section 6 of this act, touching patents to allottees therein mentioned. But such conditions, restrictions, and limitations shall not extend beyond the expiration of the time expressed in the patent herein authorized to be issued to the tribe in common: And provided further, that these patents, when issued, shall override the patent authorized to be issued to the tribe as aforesaid, and shall separate the individual allotment from the lands held in common, which proviso shall be incorporated in the patent issued to the tribe."

Chase, Jr., was born December 3, 1895. Hiram Chase, Sr., testified that he transmitted to the Secretary of the Interior an application for an allotment for the land described in the complaint; that said application was denied; that witness was not able to produce said application nor the letter written him in reply thereto; that said papers had been lost or mislaid. The trust period mentioned in the act of 1882 expired in 1909. In the absence of other legislation it therefore appears that Chase, Jr., was within the terms of the act of 1882 allowing allotments to Omaha children born during the trust period. We proceed, therefore, to consider the question heretofore stated as being the question for decision. The act of 1912, supra, reads as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the Secretary of the Interior be, and he is hereby, authorized to cause to be surveyed, if necessary, and appraised, in such manner as he may direct, in tracts of forty acres each, or as nearly as to the Secretary may seem practicable, and after such survey and appraisement, to sell and convey, in quantities not to exceed one hundred and sixty acres to any one purchaser, all the unallotted lands on the Omaha Indian reservation, in the state of Nebraska, except such tracts as are hereinafter specifically reserved; Provided, that the said land shall be sold to the highest bidder under such regulations as the Secretary of the Interior may prescribe, but no part of said land shall be sold at less than the appraised value thereof: And provided further, that prior to such appraisement and sale any member of the Omaha Tribe whose allotment is subject to erosion by the Missouri river shall be permitted to relinquish such allotment and select lieu lands of equal area from the unallotted lands, the lands so relinquished to become a

part of the unallotted tribal lands and subject to appraisement and sale under the terms of this act.

"Sec. 2. That the 'Secretary of the Interior is hereby directed to reserve from sale, under the terms of this act, the following tracts of land for the purposes designated: Forty-nine acres of the land now used for agency purposes to be reserved for agency and school purposes for so long as the need thereof exists; ten acres to be selected by the tribe for use as a tribal cemetery; ten acres of the land now reserved for the use of the Presbyterian Church to be selected by the officials of said church for the use of the church so long as needed for religious or educational purposes; two acres of the land on which is standing what is known as the old Presbyterian mission building, and the Secretary of the Interior is hereby authorized to cause a patent in fee simple to issue therefor in the name of the State Historical Society of Nebraska: Provided, that of the land now reserved for agency purposes the Secretary of the Interior is directed to reserve and set aside for town-site purposes one hundred and sixty-four acres, other than the forty-nine acres hereinbefore reserved, and shall cause the same to be surveyed and platted into town lots, streets, alleys, and parks, the lots to be appraised and sold under the terms of this act, and the streets, alleys, and parks are hereby dedicated to public use: Provided further, that the lands allotted, those retained or reserved, and the surplus lands sold, set aside for town-site purposes, or otherwise disposed of, shall be subject for a period of twenty-five years to all of the laws of the United States prohibiting the introduction of intoxicants into the Indian country.

"Sec. 3. That the proceeds of such sale, after paying all the expenses incident to and necessary for carrying out the provisions of this act, and after reimbursing the general trust fund of the tribe for any assessment paid therefrom for protecting the unallotted tribal lands from overflow, shall be divided pro rata among the children of the Omaha Tribe living on the date of the passage and approval. of this act who have not received allotments of land under the acts of August seventh, eighteen hundred and eighty-two (twenty-second United States Statutes at Large, page three hundred and forty-one) and March third, eighteen hundred and ninety-three (twenty-third United States Statutes at Large, page six hundred and thirty), and shall be expended for the benefit of said Indians when and in such manner as in the opinion of the Secretary of the Interior shall be to their best interests, and pending such expenditure by the said Secretary the sums due the respective Indians shall be placed to the credit of the said Indians in the treasury of the United States, and shall bear interest at the rate of five per centum per annum, but in the event of the death of any such Indian while there remains in the treasury to his credit any part of the sum so deposited the said sum shall be paid at once to his heirs, who shall be determined by the Secretary of the Interior in accordance with the laws of descent in force in the state of Nebraska, and the action of the Secretary of the Interior in determining the legal heirs of any deceased Indian, as provided herein, shall in all respects be conclusive and final.

"Sec. 4. That for the purpose of carrying out the provisions of this act there is hereby appropriated, out of any money in the treasury not otherwise appropriated, the sum of three thousand dollars, or so much thereof as may be necessary, to be reimbursable out of the funds arising from the sale of said lands."

It appears on the record that no allotment of land was ever made to children born during the trust period under the act of 1882. The title of the Omaha Tribe of Indians and the individual members thereof in the unallotted lands mentioned in section 8 of the act of 1882 was merely one of occupancy or possession. United States v. Chase, 245 U. S. 89, 38 Sup. Ct. 24, 62 L. Ed. 168. From a reading of the act of 1912, it clearly appears, in our opinion, that the act deals wholly and completely with the unallotted lands referred to in section 8 of the

act of 1882. There is no repealing clause in the act, but we are of the opinion that it is so far repugnant to, and covers so completely the subject of, the disposition of the unallotted lands of the Omaha reservation, that it must be held to have repealed that portion of the act of 1882 which authorized allotments to Omaha children during the trust period. The act of 1912 comes within the rule that, where two or more acts are passed, and the latter act, whether in the form of an amendment or otherwise, covers the whole subject-matter of the former, and is inconsistent with it, and evidently intended to supersede and take the place of it, repeals the former law. U. S. v. Tynen, 11 Wall, 88, 20 L. Ed. 153; King v. Cornell, 106 U. S. 395, 1 Sup. Ct. 312, 27 L. Ed. 60; Murphy v. Utter, 186 U. S. 95, 105, 22 Sup. Ct. 776, 46 L. Ed. 1070; The Paquette Habana, 175 U. S. 677, 685, 20 Sup. Ct. 290, 44 L. Ed. 320; Ency. U. S. Reports, vol. 11, page 98; 36 Cyc. 1082; Minn. Impr. Co. v. Billings, 111 Fed. 972, 50 C. C. A. 70.

[2] The Secretary of the Interior, of course, could not allot the un-allotted lands under the act of 1882, and also sell them under the act of 1912; nor could he allot the unallotted lands and at the same time make the reservations which he is commanded to make by section 2 of the latter act. It is so plain that both acts cannot be carried out that it is unnecessary to discuss that question. It is claimed, however, by counsel for appellant, that the Secretary of the Interior is simply "authorized" to cause the unallotted lands to be surveyed and sold and make the reservations prescribed in section 2, and therefore it is discretionary with him whether he will perform the duty imposed upon him by the act or not, and that hitherto he has not acted. We are of the opinion that the nonaction of the Secretary is fully explained by the pendency of this suit and about 20 others like it since the act of 1912 was passed. An examination of the legislation of Congress shows that in many of the acts of Congress the word "authorized" is frequently used where a duty is imposed upon a public executive officer, and in no case are the duties imposed discretionary unless, after the word "authorized," the other words "in his discretion" are added. As was said by the Supreme Court of the United States in Mason et al. v. Fearson, 9 How. 258, 13 L. Ed. 125:

"Whenever it is provided that a corporation or officer 'may' act in a certain way, or it 'shall be lawful' for them to act in a certain way, it may be insisted on as a duty for them to act so, if the matter, as here, is devolved on a public officer, and relates to the public or third persons. * .* * Without going into more details, these cases fully sustain the doctrine, that what a public corporation or officer is empowered to do for others, and it is beneficial to them to have done, the law holds he ought to do. The power is conferred for their benefit, not his; and the intent of the Legislature, which is the test in these cases, seems under such circumstances to have been 'to impose a positive and absolute duty.'" Mayor of New York v. Furze, 3 Hill (N. Y.) 612; Minor et al. v. Mechanics' Bank of Alexandria, 1 Pet. 46, 64, 7 L. Ed. 47, and note; Livingston v. Tanner, 14 N. Y. 64; Ralston v. Crittenden (C. C.) 13 Fed. 508; Supervisors Rock Island County v. U. S., 4 Wall. 435, 18 L. Ed. 419.

It appears that the word "authorized" is used in the acts of 1882 and 1893, and in the act of 1882 in almost the identical language of

the act of 1912. Of course, we must presume that the act of 1912 was passed for the benefit of the Indians, and we are entirely within the facts shown by the record when we say that the act was the result of years of perplexity and negotiations between the Secretary of the Interior and those Indians who were interested in the unallotted lands of the Omaha Tribe. The case of Frost v. Wenie, 157 U. S. 46, 15 Sup. Ct. 532, 39 L. Ed. 614, and U. S. v. Hemmer et al., 241 U. S. 397, 36 Sup. Ct. 659, 60 L. Ed. 1055, are not in point.

[3] Chase, Jr., never obtained a vested interest in the unallotted lands of the Omaha Tribe under any law, and Congress had plenary power to at any time change the mode of disposition of these unallotted lands. Head Money Cases, 112 U. S. 580, 5 Sup. Ct. 247, 28 L. Ed. 798; Whitney v. Robertson, 124 U. S. 190, 8 Sup. Ct. 456, 31 L. Ed. 386; Cherokee Nation v. Hitchcock, 187 U. S. 294, 23 Sup. Ct. 115, 47 L. Ed. 183; Lone Wolf v. Hitchcock, 187 U. S. 557, 23 Sup. Ct. 216, 47 L. Ed. 299; Sizemore v. Brady, 235 U. S. 441, 35 Sup. Ct. 135, 59 L. Ed. 308; Cherokee Intermarriage Cases, 203 U. S. 76, 27 Sup. Ct. 29, 51 L. Ed. 96; Wallace v. Adams, 204 U. S. 415, 27 Sup. Ct. 363, 51 L. Ed. 547; Stephens v. Cherokee Nation, 174 U. S. 445, 19 Sup. Ct. 722, 43 L. Ed. 1041; Choate v. Trapp, 224 U. S. 665, 32 Sup. Ct. 565, 56 L. Ed. 941. If we should concede that Chase, Jr., had a floating right in the unallotted lands, that right did not attach to a particular tract of land until such tract of land had been definitely located, selected, and set apart to the allottee. Woodbury v. U. S., 170 Fed. 302, 95 C. C. A. 498; Smith v. Bonifer (C. C.) 138 Fed. 889; Hy-yu-tse-mil-kin v. Smith, 194 U. S. 401, 24 Sup. Ct. 676; 48 L. Ed. 1039; Cherokee Nation v. Hitchcock, 187 U. S. 294, 23 Sup. Ct. 115, 47 L. Ed. 183; U. S. v. Kagama, 118 U. S. 375, 6 Sup. Ct. 1109, 30 L. Ed. 228; Gritts v. Fisher, 224 U. S. 640, 32 Sup. Ct. 580, 56 L. Ed. 928, and many other authorities that might be cited.

The result that would follow a decision by us that the act of 1912 was of no force or effect must be considered. It appears that besides the present suit there are about 83 other plaintiffs whose suits are now pending in the court below, all of whom have made their selections for allotments and instituted their suits against the United States subsequent to the passage and approval of the act of May 11, 1912, and if they are entitled to these allotments regardless of the act of 1912, it would amount to a repeal thereof by this court, as the land claimed by these various plaintiffs practically takes up all the unallotted tribal lands. It appears, also, that upon the lands mentioned in section 2 of the act of 1912 are located the government buildings described therein, also a large Presbyterian church, Presbyterian mission building, also a cemetery wherein the Indians have buried their dead for many years. Moreover, to rule in favor of the plaintiff in this action would be to decide contrary to the construction placed upon these laws, for many years by the executive officers of the United States charged with their execution. While their construction is not conclusive it is entitled to much weight. This proposition is sup-

ported by a large number of decisions of the Supreme Court of the United States.

[4] It is contended, however, that conceding for the sake of argument what we have said in reference to the act of 1912 is true, the appellee is not in a position at this time to set up that act as a defense for the following reasons: (a) The decision of this court in Chase v. United States, supra, that appellant was entitled to an allotment under the act of 1882, as amended by the act of 1893, is the law of this case, and the District Court had no authority to hold otherwise; (b) that the Department of Justice was fully advised of the act of 1912 at the time of the original hearing of the case, and did not, either in the trial court or in this court, contend or claim that said act repealed the act of 1882, therefore appellee is now estopped from changing his position by pleading the act of 1912.

In considering these contentions it is necessary to look at the record as it stood on the former appeal. The record on this appeal does not show that the amended complaint was ever attacked as a pleading. It does show that a general demurrer was filed to the original complaint September 8, 1910, and sustained by the District Court October 2, 1911. It does not show that the complaint, either original or amended, or the action itself was ever dismissed. Turning to the opinion of this court, on the former appeal we find the recital:

"The United States appeared in due time and moved to dismiss the bill, on the ground that its allegations were not sufficient to constitute a cause of action. This motion was sustained, and, plaintiff declining to plead further, the bill was dismissed."

We therefore conclude that the record on the former appeal did show that the bill or complaint was dismissed as stated. The appellant in his amended complaint, with the treaties of March 16, 1854 (10 Stat. 1043), and March 6, 1865 (14 Stat. 667), as a background, pleaded his right to an allotment under the act of 1882, and also pleaded the act of 1893, stating his view as to the proper construction of the latter act. The act of 1912 was not mentioned in the complaint. Appellee in his motion to dismiss insisted that the complaint did not state a cause of action. The trial court adopted this view. On appeal this court decided that the trial court was in error, in that under the facts pleaded appellant was entitled to an allotment under the act of 1882, and reversed the case. The appellee had pleaded nothing, except as stated. The question for decision, therefore, on the former appeal was necessarily confined to the allegations of the complaint. Appellee contended on the former appeal that the act of 1893, and which appellant pleaded repealed the act of 1882, and made no other contention. It is thus made clear that this court on the former appeal, so far as the record shows, did not consider the effect of the act of 1912, nor was it called to the attention of the court as conclusively appears from its opinion, and the briefs of counsel. The judgment on the former appeal being one of reversal, the rule as stated in Mutual Life Insurance Co. v. Hill, 193 U. S. 553, 24 Sup. Ct. 539, 48 L. Ed. 788, applies. It was there stated:

"Hence the rule is that a judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided. An actual decision of any question settles the law in respect thereto for future action in the case. Here, after one judgment on the pleadings had been set aside, on amended pleadings a trial was had, quite a volume of testimony presented, and a second judgment entered. That judgment is now before us for review, and all questions which appear upon the record and have not already been decided are open for consideration."

See, also, In re Fork & Tool Co., 160 U. S. 248, 16 Sup. Ct. 291, 40 L. Ed. 414; Ex parte Union Steam Boat Co., 178 U. S. 317, 20 Sup. Ct. 904, 44 L. Ed. 1084.

The question has been decided the same way by this court. The court said:

"Only those issues of law which were before the appellate court, and by it determined, become the law of the case, when, upon reversal, the cause is retried." Iowa Central Ry. Co. v. Walker, 255 Fed. 648, —— C. C. A. ——.

What is called the "law of the case" is only a rule of convenience, generally adhered to, of course, but not necessarily.

[5] The appellate court by such former decision did not preclude itself from doing justice between the parties, if it should be convinced that its former decision was erroneous. Messinger v. Anderson, 225 U. S. 436, 444, 32 Sup. Ct. 739, 56 L. Ed. 1152, 1156; Lewers & Cooke v. Atcherly, 222 U. S. 285, 295, 32 Sup. Ct. 94, 56 L. Ed. 202, 205, 206; Hertz v. Woodman, 218 U. S. 205, 30 Sup. Ct. 621, 54 L. Ed. 1001. There is no occasion, however, on this appeal, to consider whether our former decision was right or wrong, and we dismiss the matter without further notice. The position now taken is that the question before us on this appeal was not considered or decided on the former appeal, and is therefore, under the decisions cited, open for consideration and decision.

[6] We come now to consider the right of counsel for appellee to raise the question as to the effect of the act of 1912, because with knowledge of that act on the part of the Department of Justice the question was not raised on the former appeal. It is claimed that appellee is estopped from raising the question now, because it did not raise it on the former appeal, and further that it cannot change its position from that which it took on the former appeal. So far as the question of estoppel is concerned, we see no merit in that contention. Whether or not the act of 1912 repealed the act of 1882 was a question of law. It could have been raised without any mention of the matter in the answer filed to the amended complaint. To hold that, if counsel does not raise all the questions of law on the first appeal, he may not thereafter raise any new questions of law, would be a very severe rule. There may have been a change of counsel, and many other matters which caused the failure to raise all the applicable questions of law. The question now raised is not inconsistent with but simply an additional reason why the act of 1882 could not be relied upon by appellant as giving him an allotment. The real question is: Was the point now raised decided on the former appeal? As we are

clearly of the opinion that it was not, we think the point is still open for decision.

In view of what we have said, the decree below must be affirmed; and it is so ordered.