### In re NORMANO.

District Court D. Massachusetts.
May 31, 1934.

William G. Thompson, Daniel A. Shea, A. K. Cohen, and Max E. Bernkopf, all of Boston, Mass., for petitioner.

Philip Nichols and Arthur P. Teele, both of Boston, Mass., for Kurt von Tippelskirch, Consul-General of Germany at Boston.

Francis J. W. Ford, U. S. Atty., of Boston, Mass., for William J. Keville, U. S. Marshal.

BREWSTER, District Judge.

This proceeding is an application made by Joao F. Normano, who has been committed in extradition proceedings, in which he seeks a discharge under Rev. St. § 5273 (18 USCA § 654). The cause is before the court on admitted facts pleaded in the application and answer and the deposition of William Phillips, Under Secretary of State since March 6, 1933.

The facts appearing are that in January, 1933, at the request of the Consul General, representing the German government at Boston, Normano was arrested as a fugitive from justice, charged with having committed an offense within article 3 of the Extradition Treaty entered into between the United States of America and Germany, which became effective April 22, 1931 (47 Stat. 1862).

After a hearing before the United States Commissioner, Normano was committed, on March 4, 1933, to await action by the Department of State. The proceedings were duly certified to the Secretary of State (Rev. St. § 5270; 18 USCA § 651) on March 11, 1933. Attorneys for Normano sought a hearing before the State Department. Following the established practice of the Department, the request was denied, but an opportunity was afforded to file briefs. This was done on March 28, 1933. At no time did Normano or his attorney ask for delay. Their efforts were directed to the end of convincing the Secretary of State that there ought not to be any extradition in view of the attitude of the German government toward Jews, to which race

Normano belongs. On May 3, 1933, the German Ambassador at Washington was in conference with Mr. Phillips at the latter's solicitation, when the German Ambassador was asked if his government would withdraw the demand for the surrender of Normano. The Ambassador replied that he would have to submit the matter to his government. On May 27, 1933, he first notified the Under Secretary of State that his government was not willing to accede to the request, and on May 29 a warrant, dated May 1, was delivered to the Ambassador at Washington. The warrant was promptly forwarded to the Consul General at Boston, who designated without unnecessary delay the person authorized to receive and transport Normano to Germany. In the meantime, Normano had brought a petition for writ of habeas corpus, which is still pending. On July 3, 1933, Normano still being in jail under the order of the Commissioner, this application for a discharge was brought after reasonable notice to the Secretary of State, as required by the statute. The statute involved (18 USCA § 654) reads as follows:

"§ 654. *Time Allowed for Extradition.* Whenever any person who is committed under this chapter or any treaty, to remain until delivered up in pursuance of a requisition, is not so delivered up and conveyed out of the United States within two calendar months after such commitment, over and above the time actually required to convey the prisoner from the jail to which he was committed, by the readiest way, out of the United States, it shall be lawful for any judge of the United States, or of any State, upon application made to him by or on behalf of the person so committed, and upon proof made to him that reasonable notice of the intention to make such application has been given to the Secretary of State, to order the person so committed to be discharged out of custody, unless sufficient cause is shown to such judge why such discharge ought not to be ordered."

If this statute is to be given effect, Normano was entitled to apply for a discharge by virtue of its provisions after the 7th day of May, 1933. As I interpret the statute, he is entitled to his freedom unless the court finds sufficient cause for refusing a discharge.

The attorneys for Normano urge as grounds for granting the petition the reports respecting the treatment accorded Jews under the present régime in Germany, of which it is argued this court may well take judicial notice. Such considerations ought not to influence the decision. Whatever may be the situation in Germany, the Extradition Treaty

between that government and the United States is still in full force, and it is the duty of the court to uphold and respect it just as it is bound to uphold the laws and Constitution of the United States. I rest my conclusion upon entirely different grounds.

■ While the language of the statute is that it shall be "lawful for any judge of the United States" to discharge out of custody the ·person demanded, I construe these words as tantamount to a mandate requiring the discharge unless sufficient cause to the contrary is shown. Normano had a right to expect of the court that it would do whatever Congress has declared lawful for it to do. Such a construction of the language employed I think is supported by the authorities. Mason v. Fearson, 9 How. 248, 258, 13 L. Ed. 125; Chase v. United States (C. C. A.) 261 F. 833; United States Sugar Equalization Board v. De Ronde & Co. (C. C. A.) 7 F.(2d) 981, 986.

■ It is not incumbent upon the petitioner to provide a sufficient cause for extending the benefits of the statute. . The person accused is entitled to the benefit of every statutory provision. Grin v. Shine, 187 U. S. 181, 23 S. Ct. 98, 47 L. Ed. 130.

·On the contrary, the burden is upon those who resist the petition to present evidence which would justify the court in withholding the discharge after the expiration of the time limited.

■ .In the case at bar, I am unable to discern any grounds which would constitute sufficient cause for retaining custody of Normano in these extradition proceedings. If the delay in delivering the warrant to the German Ambassador was caused by Normano, I should have no hesitation in regarding that as a sufficient cause for refusing the discharge, but from the undisputed facts in the case Normano cannot· be charged with the delay subsequent to March 28, 1933. The delay from that time until May 3, when the State Department took the matter up with the German Ambassador, is not explained; nor is the delay from May 3 to May 27, when the Ambassador gave his reply to the request of Mr. Phillips. I do not. conceive it my province to search out the cause for this delay. My responsibility ends when I find, as I do, that the delay is not attributable to any efforts on the part of Normano to postpone the time when he should actually be delivered to an authorized representative of the German government.

■ By the express terms of Rev. St. § 5270 (18 USCA § 651), which authorized the arrest, examination, and commitment, of the fugitive, the statute was to operate upon the extradition treaties between the government of the United States and foreign governments. I find nothing in the terms of the Extradition Treaty with Germany which supersedes or modifies the provisions of this section, or Rev. St. § 5273 (18 USCA § 654). On the contrary, article 10 of the treaty contains a provision that the arrest shall be brought about in accordance with the laws of the party to which the request is made and that the fugitive shall be surrendered according to the forms of law prescribed in such cases. I have no difficulty in reaching the conclusion that Rev. St. § 5273 (18 USCA § 654) operated upon the Extradition Treaty with Germany.

The history of the legislation and its application by the Department of State fortify this result.

In 1848 (9 Stat. 302) Congress enacted an act to give effect to certain treaty stipulations between this and foreign countries for the apprehension and delivering up of certain offenders. The right of Congress to provide for the extradition of criminals in its own way, with or without a treaty to that effect, was recognized in Grin v. Shine, supra, and again in Charlton v. Kelly, 229 U. S. 447, 463, 33 S. Ct. 945, 57 L. Ed. 1274, 46 L. R. A. (N. S.) 397, and it was for the purpose of providing appropriate proceedings for the apprehension and delivering up of offenders to foreign governments that the statute was passed.

This statute reappears in chapter 20 of title 18 of the USCA § 651 et seq., and section 654 (Rev. St. § 5273), under which this proceeding is brought, was a part of the original act. It clearly indicated the purpose of Congress to require prompt action on the part of representatives of this. government and of the demanding government by providing that, if the alleged fugitive had not been delivered up and conveyed out of the United States within two calendar months, after he had been committed, plus whatever time was necessary to convey the prisoner from the jail to the nearest port of embarkation, he would be entitled to his freedom in the absence of an adequate cause for continuing the custody. In re Dawson (C. C.) 101 F. 253; In re Stupp, 12 Blatch. 501, Fed. Cas. No. 13,563. See Wright v. Henkel, 190 U. S. 40, 23 S. Ct. 781, 47 L. Ed. 948.

It is equally apparent, from a consideration of extradition cases that have come before the Executive Department of this government, that former secretaries of state have

recognized the necessity of completing the extradition within the two-month period. In 1910, Secretary of State Knox advised the Ambassador of Austria-Hungary that "under our law a period of two calendar months from the date on which the accused was committed by the magistrate for extradition is allowed to convey him out of the United States." And again, John Bassett Moore, in his Digest of International Law, vol. IV, p. 404, cites a communication from Secretary of State Olney, in 1896, to support the proposition that "the Department of State cannot extend the time for taking a prisoner out of the United States, which is limited by statute to two calendar months from his commitment by the magistrate."

To the same effect see Spear on the Law of Extradition, p. 246.

I am of opinion, therefore, that upon the facts before me, concerning which there is no controversy, and for the reasons above stated, the applicant, Normano, is entitled, by virtue of the statutes involved, to be discharged out of custody, and I so order.

The application is granted.